NEWSOM'S ADM'R v. NORFOLK & W. R. CO.

(Circuit Court, W. D. Virginia. July 22, 1896.)

MASTER AND SERVANT—PERSONAL INJURIES—RAILROAD FENCING LAWS.

The Virginia statute requiring railroad companies to fence their tracks through all inclosed lands except within the limits of cities or towns, and except where the landowner has been compensated for maintaining his own fences (Code 1887, §§ 1258, 1259), and which provides that in cases of injury to "property" on any part of the track not so inclosed the claimant need not prove negligence, etc. (section 1261), is not intended for the protection of railroad employés, and, though the death of an employé results

from an accident caused by a failure of the company to fence, a recovery cannot be had without proving negligence.

This action was trespass on the case, brought by Edward Newsom's administrator against the Norfolk & Western Railroad Company to recover damages for causing the death of the said Edward Newsom.

J. C. Wysor and Longley & Jordan, for plaintiff.

Fulkerson, Page & Hurt and Bolling & Stanley, for defendant.

PAUL, District Judge. This is an action of trespass, brought by the plaintiff to recover damages of the defendant for causing, through negligence, as the declaration alleges, the death of the plaintiff's intestate, who, at the time of his death, was an employé of the defendant railroad company. The main ground on which the plaintiff bases his right to recover damages for the death of his intestate is the failure of the defendant company to inclose its roadbed with lawful fences, as required by the provisions of section 1258 of the Code of Virginia of 1887; that by reason of such failure on the part of the defendant to fence its roadbed cattle strayed on its track, whereby one of its railroad trains was derailed, and plaintiff's intestate, an employé thereon, was killed. Section 1258 of the Code of Virginia of 1887 is as follows:

"Sec. 1258. To Enclose Roadbeds with Fences; Cattle-Guards.—Every such company shall cause to be erected along its lines and on both sides of its roadbed, through all enclosed lands or lots, lawful fences as defined in section two thousand and thirty-eight, which may be made of timber or wire, or of both, and shall keep the same in proper repair, and with which the owners of adjoining lands may connect their fences at such places as they may deem proper. In erecting such fences the company shall not obstruct any private crossing, but on each side thereof, across its roadbed, shall construct and keep in good order sufficient cattle-guards with which its fences shall be connected. Such cattle-guards may be dispensed with by consent of the owners of such private crossings. the company, in lieu of cattle-guards, erecting and keeping in good order sufficient gates."

All of the evidence for the plaintiff and for the defendant company being introduced, the defendant requests the court to give the jury the following instruction:

"The court instructs the jury that the duty imposed by the statute upon railroad companies to fence their roadbeds is a duty only to the public and to the owners of the cattle of the inclosed lots or lands through which the railroad runs; and an employé of the company, receiving a personal injury in an accident consequent upon a failure to maintain proper fences, cannot recover damages of the railroad company for such injury without showing negligence other than the failure to fence. And unless the jury shall believe from the evidence that the plaintiff in this case has shown that his intestate, Edward Newsom, was killed through some other negligent act of the defendant, its agents or servants, than the neglect to fence its roadbed at this point, they will find for the defendant, although they may believe from the evidence that the defendant was bound, under the statute, to fence its roadbed at this point, and had failed and neglected to fence the same."

The plaintiff objects to this instruction on the ground that the section quoted imposes on the railroad company, where it has failed to fence its roadbed as required by the statute, a liability for injury to an employé of the railroad company consequent upon its failure to fence its roadbed. The defendant contends that the statute makes

the railroad company liable alone for damages done to stock by reason of the failure of the railroad company to fence along its line where the same runs through inclosed lands and lots, and not to injuries to persons.  These conflicting views as to the scope of the statute present the question which the court must determine.  The statute in question is an innovation on the common law as to the duties of a railroad company to protect its lines against trespassing animals.  "At common law, a railway company is not bound to maintain fences sufficient to keep cattle off its line." Whart. Neg. § 886.  "Where there exist no statutory regulations defining the duties of railway companies in respect to fencing, they are under no obligations to make or maintain fences between their roads and the adjoining lands. They come within the common-law rule, and at common law the owner of the land is not obliged to fence against the cattle of his neighbor." Id., note.  "Further, as a rule of exposition, statutes are to be construed in reference to the principles of the common law; for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required.  The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced; for, if the parliament had had that design, it is naturally said, they would have expressed it." Dwar. St. p. 185. "The same rule of interpretation is adopted by our courts, federal and state; reference is had to the common law in force at the time of their passage.  *  *  *  Chancellor Kent says: 'This has been the language of courts in every age, and when we consider the constant, vehement, and exalted eulogy which the ancient sages bestowed upon the common law as the perfection of reason, and the best birthright and noblest inheritance of the subject, we cannot be surprised at the great sanction given to this rule of construction.'" Id., note 7. Apart from the requirements of section 1258 of the Code of 1887, there is no obligation in Virginia upon a railroad company to fence its roadbed. The enactment of this statute had its origin in the frequent injuries done to stock where railroads ran through inclosed lands, and in the consequent litigation arising from the damage done the owners of the stock.  The question whether the injury was due to the negligence of the railroad company or to that of the owners of the stock in allowing it to trespass on the railroad bed, being the source of much litigation, with no satisfactory rule of law by which the responsibility for acts of negligence could be fixed, induced the legislature to pass the fence law.

Taking this legislation as we find it in the Code of Virginia of 1887 (chapter 52), we find no provision as to injuries done to persons by reason of the failure of a railroad company to fence along its line through inclosed lands.  As to injuries to property, section 1261 is clear and explicit in fixing the liability of the railroad company for negligence for its failure to fence as required by the provisions of section 1258, for it (section 1261) provides that:

"In any action or suit against a railroad company for an injury to any property on any part of its track not enclosed according to the provisions of this chapter, it shall not be necessary for the claimant to show that the injury was caused by the negligence of the company, its employés, agents, or servants."

Section 1259 provides:

"Sec. 1259. Qualification of Preceding Section.—The preceding section [section 1258], so far as it relates to fencing, shall not apply to any part of a railroad located within the corporate limits of a city or town, nor within an unincorporated town for the distance of one quarter of a mile either way from the company's depot, nor to any part of a railroad at a place where there is a cut or embankment with sides sufficiently steep to prevent the passage of stock at such place; nor shall it apply to a company which has compensated the owner for making and keeping in repair the necessary fencing, but the burden of proving such compensation shall be on the company, and no report of any commissioners shall be received as proof thereof unless it shall plainly appear on the face of the report, or from other evidence in connection therewith, that an estimate was made by such commissioners for the fencing and the expense for the same entered into and constituted a part of the damages reported and actually paid."

In this section we find that the legislature was dealing with the subject of property, and not of persons. Again, it is to be especially noted that section 1258 shall "not apply to a company which has compensated the owner for making and keeping in repair the necessary fencing." If the legislature, in section 1258, intended to provide against injuries to persons by requiring the railroad company to fence its line through inclosed lands, and to make it liable for injuries to persons by its failure to do so, it has embarrassed us with a strange inconsistency in exempting the railroad company from all liability for personal injuries arising from animals trespassing on its track if the railroad company has paid the owner of the land for keeping up his own fences, whether he keeps them up or not. The court cannot gather from this chapter the intention of the legislature to embrace within its provisions injuries to persons from a failure of a railroad company to fence its lines. But, in order to extend its provisions so as to embrace persons as well as property, the court is asked to construe this statute in the Code in connection with the original act of 1883–84 (Acts Va. 1883–84, p. 703). The title of that act embraces three subjects of legislation, viz.: "To lessen the danger of traveling on railroads, and to require them to erect depots, and to fence railroad beds." Section 1 of that act provides:

"(1) Be it enacted by the general assembly of Virginia, that in order to prevent the frequent occurrence of accidents on railroads, and the consequent destruction of life and property, and in order to lessen the danger to the traveling public and the officers and hands engaged in running the trains over the said railroads, it shall be the duty of all railroad companies chartered by the state of Virginia, and now doing business in the state, and such as may hereafter be constructed under charters already granted, or which may hereafter be granted, to establish at depots on their respective lines, not more than ten miles apart, telegraph offices, to be operated by competent persons in the employ of such railroad company, whose duty it shall be to telegraph the arrival and departure of each and every train so soon as the same shall leave the depot, to the office of the master of trains or other persons in charge of the running of the same; or if there be no such person, then to the telegraph station nearest thereto in the direction in which such train is going, and the person in charge of the running of the trains shall forthwith issue such orders or give such notification by telegraph as may be necessary to prevent any collision: provided, however, that the board of public works may grant to any such company permission to have such telegraph stations in any special case at a distance from each other greater than ten miles but not more than fifteen miles, and such stations may then be erected in accordance with such permission."

Counsel for the plaintiff contend that the preamble to this section is to be applied to the provisions of the section (1258) requiring the railroad companies to fence their roadbeds. But the court thinks the preamble is confined to section 1, in which it is found, which provides for establishing telegraph offices at depots not more than 10 miles apart, unless the board of public works grants permission for a greater distance, not exceeding 15 miles. This is the only provision in the act that has for its object the protection of passengers and employés. Section 2 of the act begins a new subject of legislation, —the protection of owners of inclosed lands from loss by reason of injuries to their stock by railroad companies running their trains through their lands,—and this section and those following it are substantially the same as in the present Code. If the legislature meant to make a railroad company responsible for injuries to persons occasioned by its failure to fence its line, it is inconceivable how, in so important a matter as the preservation of human life, it should have failed to express clearly its intention. The insertion of a word or phrase might have given the statute the effect contended for by counsel for the plaintiff. It has not chosen to make this addition, and the court is not at liberty to interpolate it by a strained and unauthorized construction.

Counsel on both sides have cited authorities, chiefly from text-books, to show the construction given by the courts of other states to the statutes of such states establishing fence laws. These, as presented here, are conflicting in their conclusions, and have been of little aid to the court. Of course, these decisions are based on the statutes of the several states. We have not before us these statutes, and are unacquainted with their provisions. Whether they require a railroad company to fence along its whole line, or only along a part of it, whether they make exceptions and reservations as contained in the Virginia statute, the court cannot say. The instruction asked by the defendant correctly states the law, and the court will give the same to the jury.