### GILL v. LOUISVILLE & N. R. CO.

(Circuit Court, E. D. Tennessee, N. D.   March 10, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS.

A railroad being under no common-law duty to its servants to fence its tracks, a declaration alleging that plaintiff's intestate, a locomotive engineer employed by defendant, was killed by the derailment of his engine in a collision with a cow which had strayed on defendant's tracks owing to its negligence in failing to maintain sufficient fences along its right of way, etc., stated no cause of action against the railroad company at common law.

2. SAME—STATUTES.

Acts Tenn. 1891, p. 220, c. 101, § 2, makes all persons or corporations owning or operating railroads in Tennessee absolutely liable for all live stock killed or injured on or near their tracks by a moving train, subject to the defense of contributory negligence, and section 3 exempts railroad companies from such liability if the track is inclosed by a lawful fence and good and sufficient cattle guards. Held, that such act imposes no duty on railroad companies to employés to fence their tracks, and hence a cause of action for death of an engineer in a collision with a cow, which strayed on the track where it was unfenced, could not be predicated thereon.

Jno. W. Green, for plaintiff.
Cornick, Wright & Frantz, for defendant.

McCALL, District Judge.   This case is before the court upon defendant's demurrer to the declaration. In substance, the declaration avers that plaintiff's intestate was an employé of the defendant as a locomotive engineer, and that while in the discharge of his duty as

an engine driver the engine was derailed and plaintiff's intestate was killed. It is averred that the derailment was caused by the engine colliding with a cow that had strayed upon defendant's unfenced railroad track, and that "his death was wholly due to the carelessness and negligence of the defendant in failing to erect and maintain a fence along its said track, so as to prevent live stock from going thereon," and that defendant "wholly failed to fence its track in Blount county [wherein the accident occurred], or to protect and guard its track, rails, and right of way in said county by fence or inclosure of any sort, in direct violation of law, and especially the fencing act, passed by the Legislature of Tennessee for the protection of life and property, both on the trains and upon the tracks."

The defendant demurs to the declaration and says:

"(1) There is no law or statute in force obligating or requiring the defendant to fence its tracks in the state of Tennessee for the protection of its employés, such as plaintiff's intestate, and it is not negligence to fail to so fence; and (2) because the plaintiff does not show or allege that the absence of such fence was not known, or by the exercise of ordinary care could not have been known to plaintiff's intestate, said James Gill, and the risk incident thereto, was assumed by him."

It is insisted in behalf of plaintiff that the declaration states a cause of action both at common law and under the statute of Tennessee. In so far as it is assumed that the declaration states a cause of action at common law, I am clearly of the opinion that the demurrer, to that extent, must be sustained. Cowan v. Union Pacific (C. C.) 35 Fed. 45; Newsom, Adm'r, v. N. & W. R. R. Co. (C. C.) 81 Fed. 133; Henninger, Adm'r, v. Southern Ry. Co. [oral charge to the jury]; Judge C. D. Clark, Knoxville, Tenn., March 21, 1899. The Cowan Case, supra, was decided by Judge Brewer, who said:

"Neither common nor statute law in Colorado requires that a railroad company fence its track to prevent cattle straying upon it, and, where there is no obligation, there is no liability."

In the Newsom Case, supra, the court said:

"At common law a railway company is not bound to maintain fences sufficient to keep cattle off its lines. Where there exists no statutory regulations defining the duties of railway companies in respect to fencing, they are under no obligations to make or maintain fences between their roads and the adjoining lands. They come within the common-law rule, and at common law the owner of the land is not obliged to fence against cattle of his neighbor."

The Henninger Case, supra, was decided by Judge Clark in this court, March 21, 1899, but was not reported. He says:

"The declaration is specifically based upon the statute, and it would be sufficient to authorize a recovery at common law, notwithstanding it is so predicated upon the statute, *if, under the common law, a right to recover existed, which it would, if the company was under an obligation to fence its track at common law. But it is not.*" (The italics are ours.)

Passing to the other question: Does the declaration state a cause of action under the laws of Tennessee?

The law of Tennessee, relating to the fencing of railroads, is found in Acts 1891, p. 220, c. 101. We quote sections 2 and 3 of said

act in full. The other sections thereof, not being deemed pertinent to the question under consideration, are omitted.

"Sec. 2. Be it further enacted that any person, company or corporation, or lessee or agent thereof, owning or operating any railroad within the state of Tennessee, shall be liable for the value of any horse, cow or other stock killed, and reasonable damages for·any injury to such live stock, upon or near the track of any railroad in this state, whenever such killing or injury is caused by any moving train, or engine or cars upon such track, provided, that contributing negligence on the part of the plaintiff in any action or suit to recover damage for such killing or injury may be set up as a defense; but, provided, further, that the allowing of stock to run at large upon common unfenced range, or upon inclosed land owned or in possession of the owner of such stock, shall not be deemed or held to be such contributory negligence, provided, further, that in any such suit or action, proof of willful intent on the part of the plaintiff therein to procure the killing or injury of any such stock in the manner aforesaid, shall defeat the recovery of any damages for such killing or injury.

"Sec. 3. Be it further enacted that no person, company or corporation owning or operating any railroad in this state, shall be liable under the foregoing section of this act, for any damage for the killing or injury of any such live stock, when the track of said railroad is inclosed by a good and lawful fence and good and sufficient cattle-guards."

This language is clear and unambiguous. The third section of the act provides that no person, company, or corporation owning or operating any railroad in Tennessee shall be liable under the second section of the act for any damage for killing or injuring any live stock, when the track of such railroad is inclosed by a good and lawful fence, and good and sufficient cattle guards. From the plaintiff's view point, the most that can be said for this act is:

"That·the object was to induce railroad companies to fence their track, primarily to the interest of the traveling public, and, secondarily, for the protection of live stock along the lines of travel." Railroad v. Russell, 92 Tenn. 110, 20 S. W. 784; Railroad v. Thompson, 101 Tenn. 201, 47 S. W. 151.

That, however, is far from holding that the act by express terms, or by intendment creates a right of action in favor of an employé who might be injured by the derailment of a train caused by a collision with stock that happened to stray upon an unfenced railroad.

What is the inducement offered? The second section of the act makes all persons, companies, or corporations owning or operating railroads in Tennessee, absolutely liable for all live stock killed or injured upon or near their tracks, when such killing or injury is caused by a moving train, provided that contributory negligence on the part of the plaintiff may be set up as a defense, and that proof of willful intent on the part of the plaintiff to procure the killing or injury of such stock shall defeat a recovery, but the allowing of stock to run at large upon common unfenced range, or upon inclosed land shall not be deemed to be such contributory negligence. The third section exempts such railroad company from such liability if the track of such railroad is inclosed by a good and lawful fence, and good and sufficient cattle guards. The only inducement to fence is, therefore, exemption from liability for killing or injuring live stock. Now, if it had been in the legislative mind to offer to railway companies other or greater inducements to inclose or fence their railroads, would they not have said as much? Had the legislators desired or intended to

make railroad companies liable for injuries to passengers or employés, when injured on any unfenced railroad, they certainly would have so written it in the act, and thereby offered a far greater inducement to fence. But the law is not so written.

It is insisted that, by a fair and proper construction of the act, it must appear that the Legislature not only intended to protect stock along the line of railways, but also the people who operated the moving trains, engines, and cars; and that since the act has this two-fold purpose, and the companies are made liable by express terms for killing and injuring stock on unfenced tracks, the protection of which is one purpose of the act, it must follow that like liability is necessarily implied for killing or injuring the other class, which the act was intended to protect.

Is the act in question susceptible of this construction? Sutherland upon Statutory Construction, § 290, says:

"The best construction of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases."

Judge Severns, in announcing the opinion of the Circuit Court of Appeals for the Sixth Circuit, in St. Louis & San Francisco R. R. Co. v. Delk (March 3, 1908, not yet officially reported) 158 Fed. 931, said:

"One of the recognized rules of construction of statutes is that we are to look to the state of the law when the statute was enacted in order to see for what it was intended as a substitute, and another is that it is not to be presumed that the statute was intended to displace the former law, whether it be statute or common law, further than was fairly necessary to give it place and operation."

With these rules in mind, we will attempt to ascertain if the statute in question can be construed as is insisted upon by the plaintiff. The act under consideration is a substitute for former statutes of Tennessee, in force at the time of its enactment, in so far as it relates to liability for killing or injuring stock, which required railroad companies to keep some one upon the engine on the lookout ahead, and, whenever an object appeared upon the track, to ring the bell, sound the whistle, put down the brakes, and do everything possible to avoid the accident. And that when the companies complied with all these statutory requirements, it was exempted from liability. These statutes have time and again been held by the Supreme Court of Tennessee to be but declaratory of the common law. The change which the act of 1891 made in either the common law or statute law of Tennessee is in exempting railroad companies from liability for killing or injuring stock if its track is fenced, without regard to whether the statutory requirements, previously in force, were observed or not, and, therefore, whether the company was guilty of negligence or not. Prior to this enactment, plaintiff's intestate, at common law, would have been held to have assumed the risk incident to the employment under the facts as stated in the declaration. We are asked to read into this statute a clause which would relieve the employé of this assumed risk imposed at common law. This would be to change and enlarge the scope and purpose of the act. Indeed, the act in no particular relates to

the doctrine of assumed risk, but is expressly limited to making railroad companies liable for killing and injuring live stock by moving trains, engines, or cars on unfenced tracks, and exempting them from such liability on fenced tracks. To this extent the act is in derogation of the common law, and it cannot be fairly presumed that the act was intended to displace the common law further than is fairly necessary to give it place and operation, and this is accomplished when it is made liable for killing and injuring stock on unfenced tracks. Undoubtedly, the Legislature has the power by proper enactment to so enlarge the terms of the act as to relieve employés of any assumed risk incident to their employment when operating trains, engines, and cars upon unfenced tracks, and to make the railroad companies absolutely liable for killing or injuring its employés when so engaged on unfenced tracks, as is sought to be done in this case. So, also, the Legislature can, if it desires, relieve the railroad companies from all liability to its employés who are killed or injured while operating trains, engines, or cars upon a fenced railroad track. But it has not done so in the act in question, and we have no authority to enlarge it by judicial construction, so that the liability or nonliability of a railroad company for killing or injuring such an employé would turn upon whether the track was fenced or unfenced. Counsel for plaintiff relies upon an opinion in Railroad v. Crider, handed down by Judge Lurton, and reported in 91 Tenn. 494, 19 S. W. 618, to support his contention. The question here raised was not before the Supreme Court of Tennessee in that case, and I am satisfied that the learned judge who handed down the opinion never for a moment contemplated that it would be cited as an authority to support the proposition now contended for by plaintiff's counsel. No case has been called to our attention wherein the Crider Case, supra, has been held as authority to sustain such contention, nor are we able to gather from it the rule which counsel insists upon.

Upon the other hand, Judge Clark, in the unreported opinion in Henninger v. Railroad, supra, passed upon the exact question here presented, and with the Crider Case before him, said:

"This statute neither in its caption nor by any fair inference from anything found in its body has any application to persons at all. The state court, discussing this act before us, seem to have intimated a wider meaning in the effort to save the statute from constitutional objection, but in doing so have read into the statute terms and provisions not found in it, nor, by any fair implication, to be construed into it. To hold that the statute has such an application as that would violate another provision of the Constitution, which requires that the subject of every statute must be expressed in its title or in the body of the act; and the purpose to protect persons by this fencing is not found in the caption, nor by any fair implication, in the body of the act. No one reading it would suspect any such purpose on the part of the Legislature, and such an enlarged meaning of it is not germane to anything that is contained in the caption or the body of the act. It is absolutely foreign, and such a meaning can only be put into the statute by judicial legislation or what is commonly called 'judge law,' which is a species of legislation not constitutionally allowed in this country. The statute does not in terms, nor by any fair implication, impose on the railroad company the general imperative duty to fence its track. But to the defendant is held out a very strong motive for its doing so in the severe liability attached in case of a failure; so that whatever might be said of it, and with whatever reason, for an extension of

the meaning of this statute to the protection of the public at large, I am clearly of the opinion that it has no application as between master and servant. Other statutes very general in their meaning, such as those designed to protect human life on highways and thoroughfares, and which expressly include the public at large in their provision, have been held to have no application in their provision as between master and servant. For example, in the switchyards of a company, the signal statutes have no application, and the signals required of a train in motion on the general line of road at crossings, etc., have no application to the servants of the company, so that without further elaboration, I hold that this case is not controlled by the statute."

To the same effect is the holding of the Supreme Court of Tennessee in L. H. Young v. C., N. O. & T. P. Ry. Co. (unreported) in 1903 at Knoxville.

The cases cited in support of the declaration, construing New York, Wisconsin, and Missouri statutes, have no application here, for the reason that the fencing statutes in these states are quite different from those of Tennessee. It will be observed that in those cases where it has been held that a right of action would lie against a railroad company for injuries caused to passengers or employés by the company's failure to fence or maintain a fence along its line it was made a positive duty of the railroad company to fence its roadbed. No such statute law exists in Tennessee.

The second ground of demurrer presents the doctrine of assumed risk. Without citing or reviewing the authorities bearing on this question, we are satisfied that this ground of the demurrer is also well taken. The demurrer is sustained. The plaintiff is allowed 20 days to amend her declaration.