GUSTAVUS A. CADY *v.* DAVID OWEN.

*Impeachment. Estoppel. Exceptions.*

The acts of a witnesss, and also his silence, where good faith requires a disclosure of his knowledge, when such acts and such knowledge are inconsistent with his testimony, may be given in evidence for the purpose of affecting his credibility.

If one stands by and sees his own property sold by another, or dealt with by another, to or with third persons, he is estopped from setting up his own title against persons purchasing, or giving credit upon it, even though his own conduct result from mere carelessness or negligence, and with no real purpose to defraud.

Upon the coming in of the jury disagreed, counsel for the first time requested the court to administer certain instructions; it was *held* that the court would be justified in disregarding the request. The rule of practice requires that any special requests to charge the jury should be presented to the court at the opening of the argument on behalf of the party making the request.

TROVER for certain property known as "Kane's Arctic Expedition," consisting of three sections of paintings on canvass. Plea the general issue and trial by jury, Windsor County, December Term, 1860, BARRETT, J., presiding.

The plaintiff's evidence tended to prove that, in November, 1858, he was the owner of the property described in this declaration, and that, as such owner, he sold an undivided half of the property to Alonzo C. Moore, under an agreement that the title to the property should remain in him until paid for;

which contract was afterwards reduced to writing, and the writ-ing was produced in evidence, dated Feb. 4, 1859. The evidence further tended to prove that the plaintiff sold the remaining undi-vided half of the property to one Reyminton, deceased, since the sale; and that the defendant, as constable, afterwards attached the undivided half of the property which the defendant had sold to Moore, upon a writ of attachment in favor of the administrator of said Reyminton against Moore, and subsequently sold the same on execution in favor of said administrator.

The defendant introduced testimony tending to prove that the sale from the plaintiff to Moore was not conditional, but abso-lute, and among other testimony, the defendant was called as a witness, and testified that when he attached the property, Alonzo C. Moore, who had been examined as a witness by the plaintiff, and had testified that the sale was conditional, was present, and said that his father owned the property. Said Moore, on his cross examination, having-denied it, the defendant offered to prove that Alonzo C. Moore did not, on that occasion, say that the plaintiff owned the property, or mention the plaintiff's name in connection with the property, to which the plaintiff objected; but the objec-tion was overruled, and the defendant so testified, to the admis-sion of which testimony the plaintiff excepted.

The defendant insisted that even if the sale were conditional, as claimed by the plaintiff, yet the plaintiff was estopped from asserting this claim; and upon this point the defendant gave evi-dence tending to prove that the plaintiff was at Chester at the time of the sale to Reyminton, and that Moore was also there; that negotiations took place between the plaintiff and Reyminton, in respect to Reyminton's making the purchase; that the plain-tiff, on that occasion, and during the negotiation, said that he owned an undivided half of the property, and that Moore owned the other half; that Reyminton objected to making a trade for the property, and taking a stranger for a partner; that he enquired as to Moore's responsiblity, and was answered by the plaintiff that he was responsible, and was a fine young man, of good habits, and had property in Bethel, and that nothing was said that Moore bought the property conditionally, and had not paid for it; that a trade was then effected between them, and the

plaintiff gave to Reyminton a bill of sale of an undivided half of the property, in which Moore is described as owning the other half, which bill of sale was dated February 3, 1859; that after the sale, and within a very short time, Reyminton, who was a merchant tailor, furnished a suit of clothes to Moore upon credit, and that upon that account and other deal the suit was predicated in favor of Reyminton's administrator against Moore, in which the defendant, as an officer, made the attachment and sale in question.

The evidence tended to show that Moore was wholly destitute of property, and insolvent at the time of the trade between Reyminton and the plaintiff, and that the plaintiff knew it.

The court charged the jury that if the plaintiff represented to Reyminton that Moore was the absolute owner of the undivided half of the panorama, and he knew, or had good reason to believe, that Reyminton was relying on that fact as the ground of credit to be given to Moore by Reyminton for the goods sold to him, and Reyminton did rely on the fact as thus represented, and by reason of such reliance gave credit to Moore for the goods sold to him, the plaintiff could not now be permitted to deny the truth of such representations, and hold the undivided half of the panorama, as against the attachment; that in order to constitute an estoppel, as claimed in behalf of the defendant, the jury must find from the evidence the representation to have been made as is claimed by the defendant; that the plaintiff knew, or had good reason to believe, that Reyminton was relying on this fact being as thus represented, as the ground of the credit that Reyminton was about to give to Moore for goods to be sold to him; that in selling the goods to Moore and giving the credit on which the property in question was attached, Reyminton did it in reliance upon the truth of such representations made by the plaintiff,—so that now to permit the plaintiff to claim and hold this property against the attachment on the debt of Reyminton against Moore, would be in bad faith, and operate as a fraud on Reyminton.

The court charged the jury in all other respects required by the case as it stood upon the evidence. No exception was taken to the charge, when the case was submitted to the jury. The jury retired for consultation and to make up their verdict. After-

wards, without having agreed, they came into court, and through their foreman stated to the court that the jurors were in some disagreement as to what the court charged on the subject of the estoppel claimed by the defendant, and wished to have the charge on that subject repeated. Whereupon the court restated the instructions as above set forth, with some illustrations to make them understood and to show their application.

Having so done, the court was requested by the plaintiff's counsel to instruct the jury that in order to have the representations of the plaintiff operate as an estoppel, the jury must find that they were made with the fraudulent intent on his part to deceive and mislead said Reyminton. The court declined so to do. To which the plaintiff's counsel took exceptions.

The jury returned a verdict for the defendant.

*Washburn & Marsh*, for the plaintiff.

*William Rounds* and *Luther Adams*, for the defendant.

POLAND, CH. J. It does not appear from the exceptions in the case whether the plaintiff's witness, Moore, was or was not enquired of, on his cross examination, whether, at the time the property in question was attached by the defendant, he (Moore) said anything in reference to the plaintiff's being the owner of it. He had testified that the property belonged to the plaintiff. The defendant offered to prove that on that occasion Moore said nothing in relation to the plaintiff's being the owner. The plaintiff objected to this, but it does not appear that he objected on the ground that Moore was not enquired of on his cross examination, and we must therefore regard it as an objection to the general nature of the fact offered to be proved, whether that was a fact having any legal tendency to discredit the evidence of Moore given for the plaintiff.

If the plaintiff's objection to the evidence was that the enquiry had not been put to Moore, he should have raised that to the court. Such preliminary enquiry, when necessary to be made, may be waived or not insisted upon, and if not insisted upon, may properly be regarded as waived. It might have been a long time

after Moore testified, before this evidence was offered, and the presiding judge could not be expected to keep in memory whether the question had been put to him or not. If the objection was not placed on that ground, he might well suppose the question was put, or that the party waived it, and that the objection only applied to the general character of the evidence offered. The objection that the preliminary enquiry was not put, ought also to be stated, so that the defendant might obviate it by thus re-calling the witness and making the enquiry.

The counsel have discussed the question whether this was a case where the preliminary enquiry was necessary if it had been required, but as we think the question not properly raised, and as we are not entirely unanimous in our views of it, we leave it undecided. The tendency of the evidence objected to was, that Moore stood by and kept wholly silent and allowed the defendant to seize and, take away the property to satisfy his debt, when in fact it belonged to the plaintiff, as he has sworn upon the trial. The defendant insists that if it had been true that the property belonged to the plaintiff, and defendant attempted to take it upon an attachment against Moore, that he would naturally have disclosed it, and that as a fair and reasonable man he was bound to do so, for the safety and protection of the plaintiff, and to save him, as well as the attaching creditor and officer, from litigation and difficulty, and that as he did not, his conduct was inconsistent with his testimony, and therefore tends to cast some suspicion and doubt upon its truth.

As a matter of common experience, we are all aware that men generally are averse to having even their own property attached upon their debts, and many will even assert ownership in another to prevent it, and when it does in fact belong to another, we could hardly expect the debtor to stand silently by and see it seized for his debt. We think no fair-minded, honest man would feel justified in doing so, and if the defendant satisfied the jury that Moore did so, that his conduct was so far inconsistent with his testimony as to be admissible for the jury to weigh in connection with it.

The charge of the court to the jury seems to have been satisfactory, and no exception was taken; but upon the jury coming

Cady *v.* Owen.

into court not agreed, and asking the court to repeat the instructions, the plaintiff's counsel requested the court to instruct the jury "that in order to have the representations of the plaintiff operate as an estoppel the jury must find that they were made with the fraudulent intent on his part to deceive and mislead said Reyminton." This request was made at a time when the court below would have been fully justified in wholly disregarding it, and the plaintiff entitled to no exception for such refusal. The rule of practice requires that any special requests to charge should be presented to the court by the opening of the argument for such party, and though this is not always very rigidly enforced, yet to allow a party under the circumstances of this case, after the jury had been in consultation on the case, and returned into court disagreed, when the court could have no reasonable time or opportunity for reflection or consideration, to present new requests for instructions, would be wholly intolerable, and it should never be permitted.

From the exceptions in this case, however, we understand the presiding judge to have allowed an exception to the refusal of the court to charge according to the request, so that the soundness of the proposition embraced in the request is before us. We are of opinion it cannot be sustained; that if one stands by and sees his own property sold by another, or dealt with by another, to or with third persons, he is estopped from afterwards setting up his own title against persons thus purchasing, or giving credit upon it, even though his own conduct result from mere carelessness or negligence, and with no real purpose to defraud. So if it be done consciously and purposely, but the party at the time really intends not to assert his own title to the property against such third person, his purpose could not be said to be fraudulent; the fraud consists in the subsequent attempt to set up a title he has once disavowed, and upon which another has acted.

Judgment affirmed.