## RAILROAD *v.* THOMPSON.

### (*Jackson.* August 26, 1898.)

1. RAILROAD. *Nonobservance of statutory precautions.*

Nonobservance of statutory precautions for prevention of acci-
dents does not render a railroad company liable for injury to
an animal struck by its train, when, by reason of the sudden
appearance of the animal upon or in dangerous proximity to
the track, it became impossible for those in charge of the
train, by the exercise of the greatest possible diligence, to ob-
serve the signals or prevent the collision. (*Post, pp. 199, 200.*)

Code construed: § 1574 (S.); § 1298 (M. & V.); § 1166 (T. & S.).

Cases cited and approved: Railroad *v.* Foster, 88 Tenn., 680; Rail-
road *v.* House, 96 Tenn., 555.

2. SAME. *Failure to fence track.*

The mere failure of a railroad company to fence its track at the
crossing of a private way, the obstruction of which is forbid-
den and punished by statute, affords no ground for the com-
pany's liability for injury to an animal by collision with a
train at such crossing, if the company was otherwise free from
negligence. (*Post, pp. 200–205.*)

Acts construed: Acts 1891, Ch. 101; Acts 1879, Ch. 83.

Code construed: §§ 1587–88, 6869 (S.); § 5746 (M. & V.); § 4913
(T. & S.).

Cases cited and approved: Railroads *v.* Crider, 91 Tenn., 496; Rail-
road *v.* Russell, 92 Tenn., 110; Railroad *v.* Hughes, 94 Tenn.,
450; Railroad *v.* House, 96 Tenn., 552.

3. STATUTES. *Repeal by implication.*

The statute requiring the fencing of railroad tracks is not to be
construed as repealing the statute making it a misdemeanor to
obstruct certain private ways. (*Post, pp. 200–205.*)

Acts construed: Acts 1879, Ch. 83; Acts 1891, Ch. 101.

---

### FROM GIBSON.

---

Appeal in error from Circuit Court of Gibson
County. JNO. R. BOND, J.

Railroad *v.* Thompson.

C. G. Bond and R. P. Raines for Railroad.

W. S. Coulter for Thompson.

Caldwell, J.  W. W. Thompson brought this action against the Mobile & Ohio Railroad Company, to recover damages for injuries received by a mare in collision with one of the company's moving trains.  The Circuit Judge, who heard the case without the intervention of a jury, rendered judgment in favor of Thompson for $30, and the railroad company appealed in error.

Though admitting the injury to the mare, the company denies that it is legally responsible for the damage done.  The collision occurred on a private crossing, at the intersection of the company's track and a private road, about one mile north of the town of Dyer.  W. A. Hearn owned the private road, and had used it for twenty-five or thirty years as a private way from his residence across the railroad track into a large uninclosed woods, and thence to a public road leading to town, school, mill, church, and graveyard.  He owned the land on both sides of the railroad, and had no other open way of ingress and egress to and from his residence, which stands but a short distance west of the crossing.  The land on each side of the track and on each side of the crossing for a greater or less distance was inclosed by the owner, cattle guards were erected by the railroad company across its track on each side of the crossing, and these

were attached to the owner's fences by suitable wings, so that live stock on the crossing could go neither up nor down the track from that point. The crossing itself was not inclosed on either side of the railroad.   Hearn's fences on each side of the track diverged respectively to the right and to the left from the outer ends of the wings of the cattle guards, those on the east passing along one side of the large· uninclosed woods, and those on the west connecting, one with the north and the other with the south end of his front yard fence, so as to inclose the space between his front yard and the railroad at all points, except at the crossing, which was not inclosed.   Thompson had ridden the mare into this space, and dismounted at Hearn's front gate, near which he tied her to the fence, some fifty or seventy-five yards from the crossing.   The noise of an approaching freight train frightened the animal, which was blind in one eye, and caused her to break loose and run rapidly to the crossing, where the collision took place.   Thompson thinks the pilot struck her first, and then the tender.   Hearn thinks "the engine struck her, or she struck the engine," near the engineer's seat, and was then knocked down by the tender or one of the cars; and the engineer says, "she struck the engine at the cab where" he sat, and in that way was injured.

There could be but one of two grounds of liability on the part of the railroad company—first, a failure to comply with statutory precautions for the pre-

vention of accidents; or, second, a failure to fence the crossing. It is conceded in the testimony of the railroad company that there was, in fact, a failure in both particulars, and yet it denies that it is liable, under the attending circumstances, on either ground.

In any and every view of the evidence, the animal's appearance upon the track, or in dangerous proximity to it, was, undoubtedly, so sudden that those in charge of the engine could not, thereafter, by the greatest possible diligence, have observed the precautions prescribed by the statute (Code, § 1166, Subsec. 4; M. & V., § 1298, Subsec. 4; Shannon, § 1574, Subsec. 4) for the prevention of accidents. This being so, the admitted nonobservance of those precautions affords no ground of liability on the part of the railroad company for the damages done. The law does not require impossibilities, nor impose penalties for not doing what could not have been done. The impossibility of observance in a case like that before the Court excuses from liability for nonobservance. *Railway Cos.* v. *Foster*, 88 Tenn., 680; *Railroad* v. *House*, 96 Tenn., 555. It follows that there is no ground of liability on the part of the railroad company in this case, unless a failure to fence its track at the crossing where the injury was inflicted renders it liable.

The statute as to fencing declares "that any person, company, or corporation, lessee or agent

Railroad *v.* Thompson.

thereof, owning or operating any railroad within the State of Tennessee, shall be liable for the value of any horse, cow, or other stock killed, and reasonable damages for any injury to any such live stock upon or near the track of any railroad in this State, whenever such killing or injury is caused by any moving train or engine or cars upon such track; *Provided*, That contributory negligence on the part of the plaintiff in any action or suit to ˙recover damages for such killing or injury, may be set up as a defense," etc.    Acts 1891, Ch. 101, Sec. 2 (Shannon's Code, § 1587).    It also declares "that no person, company, or corporation owning or operating any railroad in this State, shall be liable, under the foregoing section of this Act, for any damage for the killing or injury of any such livestock when the track of said railroad is inclosed by a good and lawful fence, and good and sufficient cattle guards." *Ib.*, Sec. 3 (§ 1588).

This is known as the railroad fencing Act. Thereby, "the duty of fencing, and the resulting liability for failure to perform such duty, is imposed, not so much in the interest of the owners of the animals which may go upon an unfenced road, as in the interest of the general public who are concerned, that accidents shall be avoided and public travel be made as safe as the exigencies of that manner of transportation will permit." *Railroads* v. *Crider*, 91 Tenn., 496.    "The object of the Act was to induce railroad companies to fence their

tracks, primarily in the interest of the traveling public, and, secondarily, for the protection of live stock along the line of travel. The second section makes railroad companies absolutely liable in damages for all live stock killed or injured by moving trains upon unfenced tracks, and Section 3 gives them complete exoneration from liability where their tracks are fenced." *Railroad* v. *Russell*, 92 Tenn., 110, 111.

Although the language is very general and comprehensive, and does not, in terms, except any part of any railroad track from the operation of the statute, it is manifest that the complete inclosure of every track, from one end to the other, by a continuous fence, would be wholly impracticable, and could not have been contemplated by the Legislature. Hence, it has been held that the statute does not apply to depots or stations, or to grounds immediately surrounding them, or to the crossings of public highways, or to portions of tracks that lie within towns or cities, and are intersected by public streets. *Railroad* v. *Hughes*, 94 Tenn., 450; *Railroad* v. *House*, 96 Tenn., 552.

A paramount public interest always intervenes at those places, and for that reason, fencing statutes, though in general terms, are uniformly construed as impliedly excepting them from their operation. Elliott on Railroads, Secs. 1193–1195; 7 Am. & Eng. Enc. L., pp. 910–912; Thornton on Railroad Fences, etc., Secs. 86 and 91. Besides the insuperable in-

tervention of public interest, which exists in all the States alike, there are statutes in this State which imperatively forbid the obstruction of certain ways by any one (Code, § 4913, Subsec. 4; M. & V., § 5746, Subsec. 4; Shannon, § 6869, Subsec. 4; Acts 1879, Ch. 83, Sec. 1), and for this additional reason, our Courts would hold such ways to be excluded by implication from the operation of the fencing statute. Private crossings are not affected with a public interest, and, therefore, they are generally held, in other States, not to be excepted from the requirements of fencing statutes. *Indianapolis* v. *Thomas*, 11 Am. & Eng. R. R. Cases, 491; *Pittsburg* v. *Cunnington*, 13 *Ib.*, 529; *Atchinson* v. *Shaft*, 19 *Ib.*, 529; *Omaha* v. *Sewrin*, 45 *Ib.*, 122.

In the States so holding, railroad companies are required to inclose private crossings by gates or bars, so as not to prevent owners from using them. 3 Elliott on Railroads, Sec. 1200.

This rule in respect of private crossings, · which seems to prevail almost universally in other States, would be equally applicable in this State, and controlling in the present case, if the fencing statute stood alone and unaffected by other statutes, for here, as elsewhere, private crossings are maintained for private use, and not for the good of the public. But this statute must be considered and construed in connection with the prohibitory statutes previously mentioned. To include private crossings in the fencing statute is to run counter to those

other statutes, and impose a liability for a failure
to do on the one hand what is prohibited on the
other. By Sec. 1, Ch. 83, Acts 1879, it is made
a misdemeanor for any person to obstruct public
highways, private ways, streets, alleys, sidewalks,
public grounds, commons, and ways leading to bury-
ing places, churches, schoolhouses, etc. Another stat-
ute declares it to be an indictable nuisance to ob-
struct public highways, private ways, etc., to burying
grounds. Code, § 4913, Subsec. 4; M. & V., § 5746,
Subsec. 4; Shannon, § 6869, Subsec. 4.

It cannot reasonably be assumed that the Legis-
lature, in passing the fencing enactment, intended to
impose on railroad companies any liability for fail-
ure to inclose, by gates or bars or otherwise, any
crossing or place or part of their lines which, by
those other statutes then existing, they were ex-
pressly prohibited from obstructing in any manner
whatsoever, upon the penalty of punishment in the
Criminal Courts of the State; nor can it be justly
said that the necessary conflict is so great that the
fencing statute impliedly repealed the others. In-
deed, there is no actual conflict when the fencing
statute is given its proper meaning—when made to
apply only to those parts of the road against whose
obstruction there was no previous prohibitory legis-
lation. All of the enactments may stand together
in full force and virtue, and operate harmoniously,
when the fencing Act is given this construction, and

rightly held to be entirely inapplicable to those places embraced in the terms of the other Acts.

The crossing involved in this case is undoubtedly embraced in those terms, and, being so, is excluded from the operation of the fencing Act. The railroad company was not only under no legal obligation to fence this crossing, but was positively inhibited from doing so. Had it obstructed the owner's use by fence, gates, or bars, it would thereby have subjected itself to criminal prosecution under the prohibitory statutes mentioned, and the existence of the fencing statute would have been no defense; conviction would have been inevitable. From all of which it follows that the railroad company is not liable for the injury done to the plaintiff's mare.

The crossing on which she was injured, though a private one, is not within the provisions of the fencing Act, and, for that reason, a failure to fence is no ground for liability. Not having been brought within the provisions of the fencing Act, this crossing was left under the operation of the statute prescribing precautions for the prevention of accidents; but, as has been seen, the mare's appearance was so sudden as to render compliance with those precautions impossible, and, for that reason, the failure to comply with them affords no ground of liability.

The judgment below is reversed, and this Court, rendering the judgment that the trial Judge, sitting without a jury, should have rendered, adjudges the nonliability of the railroad company, and dismisses the plaintiff's suit at his cost.