HEMMER v. TENNESSEE ELECTRIC POWER CO. et al. (two cases).—139 S. W. (2d) 698.

Middle Section. January 27, 1940.

Petition for Certiorari denied by Supreme Court, May 18, 1940.

Jas. C. R. McCall, Jr., and John T. McCall, both of Nashville, for plaintiffs in error.

Aust, McGugin & Cochran, of Nashville, for defendants in error.

FAW, P. J.   The above-styled two cases, brought and docketed separately below, were, by consent, tried together to a jury in the Circuit Court of Davidson County, and have been brought to this Court in one transcript, with a single bill of exceptions, and tried together here.

.Henry Hemmer was the plaintiff in one of the two cases, and his adult son, Delmas Hemmer, was the plaintiff in the other case.   The defendants in each of the two cases were the same, viz:   The Tennessee Electric Power Company, a corporation, and H. E. Ashley.

It is admitted on the record that, about 6:30 o'clock P. M. on November 15, 1937, a street car owned by defendant Power Company and operated at the time by defendant Ashley (who was then employed

by defendant Power Company as a motorman to operate said street car) collided with an automobile, owned and driven by plaintiff Delmas Hemmer, in which plaintiff Henry Hemmer was riding as the guest of his said son, and that, as a result of the collision, each of the plaintiffs suffered serious injuries to his person, and the automobile was "wrecked" and rendered practically worthless.

Averring that his injuries were proximately caused by negligence of defendant Ashley, in the particulars stated in his declaration, Henry Hemmer sued the two defendants named for $15,000, as damages for his personal injuries; and, upon the same averments of negligence of defendant Ashley, Delmas Hemmer sued the two defendants for $3,000 as damages to his person and his automobile.

To each of the declarations the defendants filed a plea of the general issue—not guilty—and the cases were submitted to a jury upon evidence on behalf of the plaintiffs and defendants, respectively, argument of counsel, and the charge of the Court; whereupon the jury found "the issues joined in favor of the defendants," and the Court rendered a separate judgment in each of the two cases dismissing the plaintiff's suit and adjudging the costs against the plaintiff.

In due season, each of the plaintiffs filed a motion for a new trial which was overruled by the Trial Court, and the plaintiffs, separately, excepted to the action of the Court and prayed an appeal in the nature of a writ of error to this Court, which was granted by the Trial Court and perfected by the respective plaintiffs, and the case has been heard by this Court on the transcript of the record, assignments of error, briefs, and oral arguments of counsel at the bar.

For convenience, we will continue to refer to Henry Hemmer and Delmas Hemmer as plaintiffs, and to the Tennessee Electric Power Company and H. E. Ashley as defendants.

It is not claimed for plaintiffs, either through an assignment of error or otherwise, that there is no material evidence to support the verdict of the jury; but it is urged that there were sharp conflicts in the testimony of the witnesses, with respect to controlling and determinative facts, which conflicts emphasize the asserted materiality and prejudicial effect of certain rulings of the Court below, and of certain instructions of the Trial Judge to the jury.

It is insisted that there was material and substantial evidence before the jury which would have sustained a verdict in favor of each of the plaintiffs, but it is, in effect, conceded by learned counsel for plaintiffs that it is not within the province of this Court to determine the comparative weight of the evidence for the parties, respectively, and that the verdicts of the jury in these cases will not be disturbed unless there was error prejudicial to the plaintiffs in the conduct of the trial below.

In the consideration and disposition of the assignments of errors

it must be borne in mind that we are expressly forbidden, by statute, to set aside the verdict or judgment, or grant a new trial, "on the ground of error in the charge of the judge to the jury . . . or for any error in any procedure in the cause," unless, in our opinion, "after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial." Code, section 10654.

The plaintiffs' first assignment of error is that the Trial Court erred "in failing and refusing to give to the jury the additional instruction requested by the plaintiffs after the jury had reported that they could not agree upon a verdict, and before the verdict was arrived at," which requested instruction is copied into the assignment, as it appears in the record; and we here quote an excerpt from the bill of exceptions (which immediately follows the recital therein of the charge of the Court to the jury and the direction of the Court to the jury to take the case and consider of their verdict), which excerpt discloses the circumstances under which the request was made and refused, and contains the requested instruction, as follows:

"The jury here retired, and deliberated upon their verdict for about two hours, and at the end of this time returned to the court-room and announced that they were unable to agree upon a verdict. Upon questioning by the trial judge, the jurors indicated that they might be able to agree, upon further discussion, and they were authorized again to retire. And the plaintiffs thereupon moved the Court to give to the jury the following additional instruction for their consideration:

" 'I charge you Gentlemen of the Jury, that where the conduct of the Defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the Defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of injury. The fact that one has put himself in a place of danger is never an excuse for another purposely or recklessly to injure him.

" 'If, therefore, you should find that the defendant Ashley discovered, or saw the automobile containing the plaintiffs motionless upon the track in front of the street car in time by the use of ordinary care to avoid striking the automobile, and that he did not use the means at hand so as to avoid striking the automobile, he is chargeable with reckless injury, and the contributory negligence of the plaintiffs, if any, would not relieve him of liability for the injury inflicted.'

"The Court overruled this motion, and the plaintiffs thereupon duly excepted to this action of the Court.

"After further deliberation, the jury again returned to the court-room, and after the polling of the jury had been waived, returned a verdict in favor of the defendants in each case."

The record does not disclose the ground or grounds upon which the learned Trial Judge declined to charge the instruction thus requested for the plaintiffs, and if his ruling was proper, in the circumstances, under recognized rules of law and practice, it will not be disturbed.

It is, we think, apparent that the requested instruction was not seasonably presented to the Trial Judge, but came too late, and, for that reason, there was no error in his refusal to give it in charge to the jury.

In some jurisdictions special requests for instructions to the jury must be presented to the court at the close of the evidence, in others at the close of the argument of counsel, and in still others at any time before the principal charge is given to the jury; but in Tennessee the established rule is that such requests must be presented to the Trial Judge after the principal charge has been given, and not previous thereto. This rule is too well settled to need citation of authority.

It is likewise the general rule, in Tennessee and elsewhere, that such requests for special instructions must be presented to the Trial Judge before the jury retires to consider of their verdict.

"If no request is made for specific charges after the general charge has been delivered, the presumption is that the charge is satisfactory to the parties." Roller v. Bachman, 5 Lea, 153, 159.

And it is not reversible error for the Trial Judge to refuse to call the jury back for special instructions requested by a party to the cause. Williams v. Miller, 2 Lea, 405, 412, 413; Bowling v. Railroad Co., 15 Lea, 122, 124, 125; Swaggerty v. Caton, 1 Heisk., 199, 202; Claxton v. Claxton, 16 Tenn. App., 399, 401, 64 S. W. (2d), 854; Tennessee Procedure in Law Cases (Higgins and Crownover), section 1460; State v. Barbee, 92 N. C., 820, 824; Cady v. Owen, 34 Vt., 598, 602; Garrity v. Higgins, 177 Mass., 414, 58 N. E., 1010, 1011; Sovereign Camp, W. O. W. v. Hutchinson, 217 Ala., 71, 114 So., 684, 686; Pybus v. Goldstein, 45 Ga. App., 669, 165 S. E., 866; Kellogg v. French, 15 Gray (Mass.), 354, 357; 11 Ency. Pl. & Pr., page 239; 4 C. J. S. Appeal and Error, page 629, section 307; 64 C. J., 856; 38 Cyc., page 1698; Abbott's Civil Jury Trials (3 Ed.), page 730.

In Williams v. Miller, supra, defendant's counsel (after the jury had been charged and had retired to consider of their verdict) tendered to the Trial Judge a series of written instructions and requested the Court to recall the jury and charge upon the points therein presented. This the Trial Court declined to do, "on the ground that they [the jury] had been charged without further request at the time" (except an *oral* request of defendant's counsel that the Court charge the jury upon the "points of defense" he had made in his argument). The Supreme Court held that the Trial Court "did not

err in the practice adopted'', and affirmed the verdict and judgment for the plaintiff.

However, the requirements of such rule are not absolute and inflexible, and the Trial Court may, in the exercise of a sound judicial discretion, waive the rule. 64 C. J., sec. 857; Tennessee Procedure in Law Cases, sec. 1460; 11 Ency. Pl. & Pr. page 238.

But it is so well settled as to be well-nigh axiomatic that the ruling of a trial judge with respect to a matter resting in his judicial discretion will not be disturbed by the appellate courts, in the absence of an affirmative showing that the trial judge abused his discretion.

In the North Carolina case of State v. Barbee, supra, the Court said:

"The Court was not bound to give the special instructions prayed for after the issue had been given to the jury. In the order of procedure in the trial, the defendant had the right, and the reasonable opportunity, to ask the Court to give such instructions before the issue was given to the jury; after that, the Court might, in its discretion, give or decline to give them. If this were not so, a party might vexatiously prolong the trial, confuse the jury, and perhaps disappoint the ends of justice. The defendant must ask for special instructions, as of right, in apt time in the progress of the trial, else the Court may decline to give them. But if the Court shall recall the jury and instruct them further, giving special or any instructions, it must give them correctly, else a party may except for error.''

In the Vermont case of Cady v. Owen, supra, the Court said:

"The charge of the court to the jury seems to have been satisfactory, and no exception was taken; but upon the jury coming into court not agreed, and asking the court to repeat the instructions, the plaintiff's counsel requested the court to instruct the jury 'that in order to have the representation of the plaintiff operate as an estoppel the jury must find that they were made with the fraudulent intent on his part to deceive and mislead said Reyminton.' This request was made at a time when the court below would have been fully justified in wholly disregarding it, and the plaintiff entitled to no exception for such refusal. The rule of practice requires that any special requests to charge should be presented to the court by the opening of the argument for such party, and though this is not always very rigidly enforced, yet to allow a party under the circumstances of this case, after the jury had been in consultation on the case, and returned into court disagreed, when the court could have no reasonable time or opportunity for reflection or consideration, to present new requests for instructions, would be wholly intolerable, and it should never be permitted.''

One of the reasons underlying the rule forbidding the recall of the jury for further instructions requested by counsel, is that an in-

struction given under such circumstances would result in unduly emphasizing, in the minds of the jury, the propositions which counsel had embodied in the instructions requested.

In the Tennessee case of Swaggerty v. Caton, supra, the Court said:

"After his Honor had charged the jury, they retired to consider of their verdict and in a short time returned into Court, and said they could not agree, and were asked by the Court 'if they disagreed as to any portion of the charge, or the testimony of the witnesses.' 'They replied that they did not know that they did.' Thereupon, the Court repeated a portion of the charge; the jury returned a second time, and said they could not agree, and the Court, without being called upon, again repeated portions of his charge. It is well enough, · when a jury asks for a particular part of a charge upon an indicated subject, for the Court to repeat that part substantially as given. But when a jury merely disagrees as to the result, after weighing the testimony and considering the charge, it is error in the Court to repeat or re-charge disjointed portions of his charge; in such instance, a jury very well may, and we think always will conclude, that the Court means to have them understand that the matter or question, thus disjointedly charged upon, is controlling in the case, and will find accordingly."

And in the 15th Lea case above cited (Bowling v. Railroad Co.) the Court said:

"While it may be proper, in some instances, that a jury should be recalled and further charged, it should always be upon sufficient reasons. It should appear that the party asking such further charge had forgotten, or that the question had occurred to him only since the charge was given and the jury retired.

"It would be dangerous to allow the recall of a jury for a further or additional charge upon the bare request of counsel without grounds. Under such a rule the ingenious lawyer would always have it in his power to have emphasized to the jury by the court any proposition he might choose to submit, and have the jury believe the court attached great weight to the matter about which it had been recalled for instructions."

It is apparent in the instant case that, in refusing to charge the plaintiffs' request, the Trial Judge had before him only "the bare request of counsel without grounds" (Bowling v. Railroad Co., supra). and in the circumstances disclosed, he did not err in refusing to charge the instruction thus requested. The plaintiffs' first assignment of error must, therefore, be overruled, irrespective of the merits or demerits of the "request" if it had been seasonably made.

Moreover, we are of the opinion that the Trial Court might well have declined to charge said requested instruction if it had been

50

made seasonably, for the reason that it was not an accurate statement of law applicable to the issues in the case.

■ While it is well settled that it is *reversible error* for the trial court to refuse to charge an additional instruction to the jury, seasonably requested, and not covered by the principal charge, presenting a theory of the case made by the pleadings and supported by material evidence, and the refusal of which would affect the results of the trial to the prejudice of the requesting party, it is equally well settled that the trial court will not be put in error for refusing to charge a requested instruction unless it is *strictly accurate.*

It is obvious that it was the purpose of plaintiffs' counsel in presenting the aforesaid request on behalf of plaintiffs to submit to the jury, as applicable to this case, the doctrine of ''last clear chance'' (or, as it is variously termed by law writers, the doctrine of ''discovered peril,'' or ''supervening negligence,'' or ''subsequent negligence,'' or the ''humanitarian doctrine''); and the plaintiffs' second assignment of error is that the Trial Court erred ''in failing to give in charge to the jury any instruction upon the doctrine of last clear chance.''

■ It is the general rule that a mere omission in the charge of the trial judge to the jury is not reversible error where no request for proper and accurate instruction was made. This rule has been so frequently applied that citation of cases is unnecessary. And we assume that this rule is equally applicable where no request was *seasonably* made.

But, notwithstanding the foregoing rules which, we think, require the overrulement of plaintiffs' first and second assignments of error, supra, we have examined the record with the view of ascertaining whether, upon the record, the Trial Judge should have given the jury instructions, *in specific terms,* on ''the doctrine of last clear chance'' and his omission to so charge the jury affected the results of the trial to the prejudice of the plaintiffs, and also whether the belated ''request'' of plaintiffs was ''strictly accurate.''

As stated in an extended annotation in 92 A. L. R., pages 47-150, there are a ''vast number of cases in which the doctrine of last clear chance . . . has been invoked and considered with reference to factual situations which embrace almost every conceivable human activity that involves danger to person or property;'' and a great number of such cases are cited and digested in that annotation. Many cases arising out of collisions between automobiles and street cars, wherein the doctrine of last clear chance was invoked, are cited and digested in annotations as follows: 28 A. L. R., pages 283-295; 46 A. L. R., pages 1047-1056; 63 A. L. R., pages 45-50; 102 A. L. R., pages 734-747.

There is no occasion for us to attempt to discuss all the multitude of cases from other jurisdictions on the subject now under consideration.

We think the principles which control our decision here have been determined and announced by our Supreme Court in the cases of Todd v. Railroad Co., 135 Tenn., 92, 185 S. W., 62, L. R. A., 1916E, 555, and Tennessee Cent. Railway Co. v. Ledbetter, 159 Tenn., 404, 19 S. W. (2d), 258.

The annotator in 92 A. L. R., supra (at page 91), refers to the opinion in Todd v. Railroad, supra as "an extended and valuable discussion of the doctrine" (of last clear chance); and the opinion in the Todd case was approved and followed in the later case of Tennessee Central Railway Company v. Ledbetter, supra.

The doctrine of last clear chance, in one of its phases, enunciated in the Todd and Ledbetter cases, supra, is entirely in accord with the rule stated in the American Law Institute's Restatement of the Law of Torts-Negligence, sec. 480, under the title "Last Clear Chance; Negligently Inattentive Plaintiff," as follows: "A plaintiff who, by the exercise of reasonable vigilance, could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

In our view of the *pleadings* and *evidence* in the instant case, the plaintiffs may not successfully invoke the doctrine of "last clear chance" as the basis of a recovery.

The averments of the declaration of each of the plaintiffs, with respect to alleged negligence of the defendants, are that defendant Ashley drove one of the street cars of his co-defendant, the Power Company, along the track of defendant Power Company, at a fast, reckless and dangerous rate of speed, without keeping a proper and reasonable lookout ahead, and without having said street car under reasonable and proper control, and he negligently, recklessly and wantonly failed to stop said street car or to check its speed, but negligently, carelessly, recklessly and wantonly drove said street car into the side of said automobile.

It is seen that there is not only an absence of an averment in the declarations that defendant Ashley discovered the plaintiffs' peril in time to have avoided the injury to them, but the averment that defendant Ashley was operating said street car "without keeping a proper and reasonable lookout ahead" tends to negative the thought that he (Ashley) discovered that plaintiffs were in a perilous situation.

The averments that Ashley "negligently, recklessly and wantonly failed to stop said street car or to check its speed," and that Ashley "negligently, carelessly, recklessly and wantonly drove

said street car into the side of the automobile,'' added no force to the declaration, except in so far as they characterized the alleged conduct of defendant Ashley as to excessive speed and failure to keep a lookout ahead. Cumberland, etc., Co. v. Cook, 103 Tenn., 730, 733, 734, 55 S. W., 152.

In the case of Drown v. Northern Ohio Traction Co., 76 Ohio St., 234, 81 N. E., 326, 329, 10 L. R. A. (N. S.), 421, 118 Am. St. Rep., 844, 850, the Court said: ''It is clear, then, that the last chance rule should not be given as a hit or miss rule in every case involving negligence. It should be given with discrimination. Since the plaintiff can recover only upon the allegations of his petition, if there is no charge in the petition that the defendant, after having notice of the plaintiff's peril, could have avoided the injury to plaintiff, and there is no testimony to support such charge, the giving of such a charge would be erroneous. There is no such allegation in the petition in this case. But, further, there is testimony tending to prove that the plaintiff's team was driven upon the street railway track in the nighttime, ahead of the car, and that it continued on the track for a distance of 250 feet until struck by the car, without taking any precaution to avoid accident. Assuming that the defendant was negligent in not seeing the buggy on the track and in not avoiding the accident, yet the plaintiff's negligence was continuous and was concurrent at the very moment of the collision. It proximately contributed to the collision, for without it the collision would not have occurred. There was no new act of negligence by the defendant, which was independent of the concurrent negligence and which made the latter remote. Therefore there was no place in the case for the doctrine of 'the last clear chance.' ''

In the case of Fletcher v. Railroad Co., 102 Tenn., 1, 49 S. W., 739, 740, the Court said that requests for special instructions must be limited to the case made by the pleadings, and held the Trial Court's refusal of plaintiff's request to charge upon the subject of ''sudden emergency'' was not error, in the absence of any averment of that fact in the declaration (citing East Tennessee Coal Co. v. Daniel, 100 Tenn., 65, 66, 79, 42 S. W., 1062, with the statement that the ''gist'' of that case was ''that the ground of recovery must be specifically set out in the declaration, and its absence cannot be cured by proof alone'').

Without pausing at this time to state the evidence relating to the manner in which the collision occurred (to which we will refer more particularly when we come to the disposition of other assignments of error), it is sufficient for the point we are now discussing to say that we find no evidence that defendant Ashley actually discovered the peril of the plaintiffs in time to avoid the collision and the injury to the plaintiffs . Furthermore, it is disclosed by the

testimony of the plaintiffs that (if their automobile was "stalled" on the railroad track, as they claim) they had abundant opportunities to avoid the impending injury, but, in utter disregard of their own safety, they negligently remained in a place of danger, without availing themselves of their opportunity to ascertain the imminence of the peril of their position on the street car track and to escape therefrom. Thus the admitted negligence of the plaintiffs continued to operate concurrently with the alleged negligence of defendant Ashley, as a producing cause of the accident, up to the time of the collision, and the plaintiffs cannot be heard to invoke the doctrine of last clear chance. Todd v. Railroad Co., supra, 135 Tenn., pages 108, 109, 185 S. W., 62, L. R. A. 1916E, 555.

But if the record had afforded a sufficient reason for an instruction to the jury upon the doctrine of last clear chance, the aforesaid instruction requested by plaintiffs was inaccurate, in that, if it had been charged, the jury would have been thereby instructed, in substance and effect, that, in the event they should find the facts as set forth therein, they must give no consideration whatever to the contributory negligence of the plaintiffs. Such an instruction would have been erroneous.

Although the rule is otherwise in some jurisdictions, in Tennessee contributory negligence of the plaintiff should be considered by the jury in mitigation of damages, even though the defendant's conduct was so "reckless and wanton" that the action was not barred by plaintiff's negligence. Louisville, N. & G. S. Railroad Co. v. Fleming, 14 Lea, 128, 137; Railway Co. v. Wallace, 90 Tenn., 53, 62, 64, 15 S. W., 921; Railway Co. v. Haynes, 112 Tenn., 712, 735, 736, 81 S. W., 374.

For the several separate and independent reasons we have stated, the plaintiffs' first and second assignments of error are overruled.

Plaintiffs' third assignment of error is that the Trial Court erred in giving to the jury, in response to a request of the defendants, an instruction as follows:

"I charge you further that the fact that plaintiff, Henry Hemmer, was a guest in the automobile of his son, Delmas Hemmer, does not excuse him from the exercise of reasonable care and caution for his own safety. If he found himself upon a street car track in a position of known danger, it was his duty to keep a constant lookout and to constantly listen for the approach of a street car upon the track and his failure to do this would constitute gross negligence; and if it continued up to the time of the collision and contributed thereto as the proximate cause of the injury, he cannot recover."

Plaintiff Henry Hemmer averred in his declaration that, when injured, he was riding as a guest in the automobile of his son and co-defendant, Delmas Hemmer, and the case was tried on that theory, without dispute.

The collision did not occur within the corporate limits of the city of Nashville, or upon a public street, road or highway, but (as alleged in the declarations) upon a "private driveway," which, it appeared from the proof, led from the residence of one A. E. Terwilliger across the double tracks of the defendant Power Company to a public street or road known as "Centennial Boulevard."

Centennial Boulevard extends, in its general direction, westward from the city of Nashville. Its western terminus is at the main entrance to the State Penitentiary. From the Penitentiary gate eastward to, and for some distance east of, the Terwilliger driveway, a double track of the defendant Power Company is on a right-of-way owned by said defendant alongside and adjacent to the south margin of Centennial Boulevard. The "outbound" street cars of defendant Power Company travel westward to the Penitentiary grounds on the northerly of the two tracks, and return eastward, towards the city (after entering and leaving the Penitentiary grounds), on the southerly of the two tracks.

The defendant Power Company's aforesaid right-of-way is not paved and is not used by the public for vehicular travel of any kind other than defendant's street cars. Within the territory described in this record there are three residences on the south side of defendant's right-of-way and tracks, and there is a private graveled driveway from each of these residences across the defendant's right of way to Centennial Boulevard. The Terwilliger driveway, on which the collision occurred, is three hundred feet from the Penitentiary gate, and is the third, or last, of the aforesaid three private driveways crossed by a street car approaching from the west.

Defendant Power Company's street cars were operated at regular intervals on the tracks above described, and this fact was known by each of the plaintiffs. The collision occurred about six-thirty o'clock (and after night-fall) in the evening of November 15, 1937. The automobile was on the intersection of the Terwilliger driveway and the southern street car track when the east-bound street car, operated at the time by defendant Ashley, a regular employee and experienced motorman, struck the right side of the automobile, near the middle, and pushed or "shoved" it sideways along the track eastward for a distance of sixty to seventy-three feet, but without overturning it. As a result of the collision, the automobile was rendered practically worthless for anything but "junk," and Delmas Hemmer suffered some painful, but not permanent, personal injuries. The right hip of Henry Hemmer was fractured and he was permanently crippled and disabled from engaging in his trade as a "metal worker."

The facts thus far stated are disclosed by the record, substantially without dispute; but, with respect to the manner in which the collision occurred (as tending to show its proximate cause), the testi-

mony of the two plaintiffs on the one hand, and that of the motorman (defendant Ashley) and other eyewitnesses on the other hand, is *irreconcilably conflicting*.

Summarizing it briefly, the testimony of the plaintiffs is that they left the automobile repair shop in East Nashville (where they were employed) at or shortly after four o'clock in the afternoon, and drove around the city of Nashville during the two or two and one-half hours that intervened before their accident; that they had gone to West Nashville to find a man from whom Delmas Hemmer wanted to buy some used automobile tires; that as they drove westward on Centennial Boulevard, and shortly before reaching the entrance to the Terwilliger driveway, they began to have motor trouble, and about the same time discovered that they had crossed and passed the street leading to their intended destination; that the driver (Delmas) turned the automobile into the Terwilliger driveway for the purpose of "backing out" onto Centennial Boulevard and heading back eastward; that he drove across the north street car track and onto the south street car track and the "ignition went bad" and the automobile "stalled" and stopped at the moment its front wheels had crossed the south rail of the south track; that Delmas busied himself with efforts to start the automobile (which consisted mainly of "stepping on the starter and pulling out the choker"), and Henry Hemmer watched Delmas; that they remained in the position just described, and occupied as above stated, for a period of time which Delmas estimated as one minute and Henry estimated as five minutes; and that neither of them saw or heard the approaching street car until Henry Hemmer saw it within thirty or thirty-five feet of them an instant before the collision and uttered an exclamation that called Delmas' attention to the street car practically at the time it struck the automobile.

According to Henry Hemmer's own testimony, he knew that an east-bound street car might come along at any time on the track whereon their automobile was standing, and, by looking, he could see a street car from the time it emerged from the Penitentiary gate, three hundred feet distant, and he testified that if he had been looking he could have seen the street car in ample time to escape injury. The record discloses no excuse for Henry Hemmer's failure to utilize the means and opportunities available to ascertain the approach of the street car; and we are of the opinion that the instruction challenged by plaintiffs' third assignment of error contained a correct statement of law applicable to the evidence in this case. Dedman v. Dedman, 155 Tenn., 241, 246, 291 S. W., 449, 451; Louisville & N. R. Co. v. Anderson, 159 Tenn., 55, 15 S. W. (2d), 753; Hatch v. Brinkley, 169 Tenn., 17, 23, 80 S. W. (2d), 838; Stem v. Interurban Railway Co., 142 Tenn., 494, 508, 221 S. W., 192; Knoxville Traction Co. v. Brown, 115 Tenn., 323, 334, 335, 89 S. W.,

319; Street Railway Co. v. Riddick, 110 Tenn., 227, 230, 75 S. W., 924. The third assignment of error is overruled.

Through their fourth assignment of error the plaintiffs assert that a certain specified and quoted paragraph of the principal charge of the Court to the jury was erroneous to the prejudice of the plaintiffs. We have hereinbefore stated, in substance, the contentions of the plaintiffs, as disclosed by their testimony, with respect to the manner in which the collision occurred. Before stating the instruction challenged by the fourth assignment of error, we will state, in substance, the defendants' contentions with respect to the manner in which the collision occurred, in order that it may be seen whether the instructions thus criticized were or not sound statements of law applicable to the evidence.

There was material and substantial evidence that, at the time of the collision, the plaintiffs had empty whiskey bottles in their automobile and that both were intoxicated; that as they approached the Terwilliger driveway the plaintiffs' automobile was being driven "in a zig-zag course" and in a manner that indicated that the driver "didn't have his car under control;" that there was ample room for an automobile to turn around in Centennial Boulevard opposite the entrance to the Terwilliger driveway, without going into the said driveway; that if an automobile was driven into the Terwilliger driveway in order to "back out," it was wholly unnecessary to drive to the south track, as such a movement of the automobile could normally be accomplished as well by "backing" from the north track; that, as the automobile was approaching the entrance to the Terwilliger driveway on Centennial Boulevard, the street car came out of the Penitentiary grounds, traveling at a speed of twenty to twenty-five miles an hour, with its lights "on," and plainly visible from that part of Centennial Boulevard where the automobile was at that time; that the automobile was turned to its left into the Terwilliger driveway across the north track and to the point of the collision on the south track, without reducing its speed, and was moving across the south track when it was struck by the street car; that when the automobile turned into the Terwilliger driveway and onto the north track the motorman of the street car applied the emergency brakes and sounded the bell and did all he could to prevent the collision, but at that time the street car was within approximately twenty-five feet of the Terwilliger driveway and it was impossible to stop it before it collided with the automobile.

There was evidence that the street car was in excellent operating condition; that, when moving at a speed of twenty to twenty-five miles an hour, it could be stopped in a distance of ninety to one hundred feet by an application of the emergency brake, and that, in the present instance, the street car moved eighty-five to ninety feet

from the time the emergency brake was applied until the car stopped.

There is also evidence that, a few minutes after the collision, Delmas Hemmer stated (by way of explanation of the cause of the accident) that "the radius rods went bad," and "he lost control" of the automobile; and neither of the plaintiffs, at that time, said anything to the effect that the automobile had "stalled" on the track.

With reference to this latter evidence, Delmas Hemmer said that he was suffering with a severe blow and wound on the head immediately after the collision, and, for that reason, did not know at that time what he was saying, and did not remember (when he testified) what he had said about the accident immediately after it occurred.

Each of the plaintiffs denied that he, or his co-plaintiff, was intoxicated, or had been drinking intoxicating liquors at the time in question; and in this denial they were supported by the testimony of two other witnesses in their behalf.

The verdict implies that the jury accepted the testimony of the witnesses for the defendants as the truth of the case, and unless the charge of the Court was erroneous, and the error was of such a character as to mislead the jury in the application of the law to the facts, the verdict should not be disturbed.

The proper interpretation of a specified sentence or paragraph of a charge, and the meaning which the jury would naturally attribute to it, would often be better understood when it is read in connection with the context. We will, therefore, quote certain connected paragraphs of the charge now before us, including the paragraph quoted in the plaintiffs' fourth assignment of error (which paragraph thus challenged as erroneous will be italicized), as follows:

"It was the duty of both the plaintiffs and the defendant Ashley to exercise ordinary care and prudence at the time of the accident. That is, it was the duty of each of them to exercise that degree of care and prudence which the law imposes upon each of them, which is ordinary care, reasonable care, and the failure to exercise such care would constitute negligence on the part of the ones so failing.

"Ordinary or reasonable care would dictate that a person operating a street car on a track should be vigilant and on the lookout and should see those things on the track which a reasonably prudent and careful street car operator should see. He should have his street car under reasonable control and when danger approaches, he should do the reasonable and necessary thing or things to avoid an accident.

"*The Court charges you that if you find from a preponderance of all the evidence that the car in which plaintiffs were riding became stalled on the track through no fault of their own and that they were doing the*

*reasonable and necessary things to get it off the track, they had a right, while they were thus engaged, to assume that if a street car should come along, the operator would not run over them, if he saw their situation and predicament; or by the exercise of ordinary and reasonable care, could have seen such in time to avoid striking them. However, this would not relieve either of the plaintiffs from their duty to make reasonable efforts, after they became stalled on the track, to ascertain if a street car was approaching and give the street car operator some warning or notice of their predicament for fear he would not be able, by the exercise of ordinary care, to see they were stalled on the track.*

"If you find from a preponderance of all the evidence in the case that the plaintiffs were stalled on the track, as aforesaid, then the Court also charges you that the defendant, Ashley, in operating the street car, if he saw or could have seen the car on the track at a reasonable distance ahead, he had the right to assume that it would move on off the track unless something was wrong, and until such time as he saw, or by the, exercise of reasonable care and caution, should have seen that the car was stalled on the track, there was no duty resting on him to do anything to avoid a collision. However, if he saw, or by the exercise of ordinary or reasonable care and caution, should have seen that the car was stalled, in a reasonably sufficient time to avoid an accident, then he would be guilty of negligence, if he failed to do the reasonable and necessary things to avoid a collision with said car.

"The Court charges you that persons operating motor vehicles on a highway and crossing street car tracks should use ordinary care that is commensurate with the risks, taking into consideration the kind, character and condition of the vehicle they are operating, the roadway, the amount and character of the traffic thereon, the street crossings, car track crossings and any and all other facts and circumstances which should be seen and considered by an ordinarily prudent and careful person. They should be vigilant and on the lookout to have their car under reasonable control and when a dangerous situation exists, they should do the reasonable and necessary things to avoid an accident. They should see those things which a reasonably prudent and careful person could see."

In our opinion, the above-quoted instructions were a proper amplification, appropriate to the evidence in this case, of the principle stated in Memphis St. Railroad Co. v. Roe, 118 Tenn., 601, 609, 102 S. W., 343, 345, that "the duty to use ordinary care to avoid receiving an injury is the complement of that to avoid inflicting an injury, and these correlative duties are imposed on all persons 'exercising independent rights.' "

It was proper to instruct the jury to take into consideration the kind and character of the "crossing" on which the collision

occurred, and the amount and character of traffic thereon, etc., for the collision here involved did not occur on a public street crossing, and "private crossings are not affected with a public interest" to the same degree as public crossings. Railroad v. Thompson, 101 Tenn., 197, 203, 47 S. W., 151, 152.

Paraphrasing the language of the Court in Caplan v. Reynolds, 191 Iowa, 453, 182 N. W., 641 (see annotation, 24 A. L. R., page 950), the plaintiffs were in a private driveway, and, while we would not be disposed to hold them trespassers in this case, the fact that the driveway was a private one, not frequented by the general public, was a circumstance to be considered in the defendants' favor as bearing upon the degree of watchfulness and care the motorman of the street car was bound to use.

We find no error in the charge criticised by the fourth assignment of error, and that assignment is overruled.

Through their fifth (and last) assignment of error, the plaintiffs assert that the Trial Court erred "in giving in charge of the jury, at any time, and especially as one of the Court's concluding instructions, the following rebuke to counsel:

" 'In arguing the case, Counsel for the plaintiffs insinuated that the defendant Power Company, "had used a batch of money" in this case. Counsel for the Power Company has asked that the Court instruct the jury to ignore such argument, and the Court instructs you that there was no ground for such argument. The Court feels that the jury is too intelligent, and fairminded to be affected by any argument, except what is based on the facts proven and all natural and reasonable inferences to be drawn from those proven facts.' "

The argument offered in support of the fifth assignment, supra, is summed up in the brief for plaintiffs as follows:

"Said instruction constituted an unwarranted restriction on plaintiff's right to present their theory of the case by proper argument; was in effect an instruction or expression of opinion upon material and disputed facts in favor of defendants to the plaintiffs' prejudice; and, because of the prejudicial delay which over-emphasized the rebuke and gave it disproportionate importance, the instruction was an abuse of the Court's discretion in controlling argument of attorneys."

It appears from the record that, in the final argument of counsel in the trial of the case below, one of plaintiffs' attorneys made statements to the jury as follows:

" 'It seems to be dangerous for an East Nashville man to go to West Nashville, particularly if he gets hurt by the Tennessee Electric Power Company.

" 'To beat this crippled old man out of his money, they brought in old Sampson, the witness who saw it all, and knows everything.

The man whose talking to the motorman caused this wreck, if you want to know the truth about it. Here is old Sampson who kept his eye on this automobile all the way from the railroad crossing, and saw it suddenly leave the road and dart out across the tracks, across the grass—not on the Terwilliger driveway, but 50 feet below that drive—all in order to keep from paying this old man what the Company owes him. Old Sampson, the eagle-eyed witness, the impartial observer.

" 'The significant thing about Sampson's testimony is not that he tells a story that everybody in this Court knows isn't true. The significant thing is that Sampson's story is just exactly what this Power Company was going to try to convince you was the way this accident happened—if I hadn't turned up here the first day of this trial with the four pictures that Steve Hood took out there on last November 29, 1937, while the scars from this accident were still visible on the ground out there, showing that this auto was knocked off the Terwilliger driveway and shoved 73 feet down the track in front of this street car before it could be stopped.

" 'The defendant Power Company knew about this wreck when it happened, and they were sued soon thereafter. They knew these marks were on the ground on its tracks, testifying to the negligent near slaughter of this old man. Did they go out and photograph this scene while the marks of their iniquity were still there? Did they try to show the facts in pictures they took? They did not.

" 'They waited until a year was past. Until a spring and summer had brought a fresh growth of beautiful, smooth grass to cover these tell-tale scars, and until this mark of their guilt was no longer visible. And then they took some pictures of this self-same scene, on the day this trial started; and came over to this courthouse, prepared to show you these fine unsullied views, and to say, 'See, there are no scars like the plaintiff says,' and prove through old Sampson and others that this automobile dashed out Centennial Boulevard at 25 miles an hour, and suddenly and without any warning, and without changing speed, swerved across the grass plot or common 50 feet below the Terwilliger driveway and immediately in front of the street car.

" 'They were dumbfounded when these pictures, taken right after the wreck, and while the scars were still showing, were introduced here the first day of the trial—pictures that tell the tale of this wreck truly, definitely and exactly. It meant there had to be a change so as to make it a sudden dash by the Hemmers into the Terwilliger driveway, instead of a sudden dash across the commons 50 feet below—all just in order to keep from paying this old man for the wrong they did him.

" 'Old Sampson hadn't got hep to the new defense theory, while the other witnesses had. That's the significance of his yarn. He didn't know what his new story was supposed to be.

" 'It's a miracle what you can do with a bale of money.' "

At the conclusion of the aforesaid argument of plaintiffs' counsel, the defendants' counsel, in the absence of the jury, moved the Court to instruct the jury, in the charge, that the statement of plaintiffs' counsel that "It's a miracle what you can do with a bale of money," was not a proper statement, for the reason that there was nothing in the record to support such a statement.

Near the close of his principal charge the Trial Judge gave to the jury the instruction copied into the fifth assignment of error, supra.

In the connection in which it was made, we are unable to see any meaning or significance in the statement that "It's a miracle what you can do with a bale of money," other than as an "insinuation" that the defendants had used money improperly in the procurement of evidence in the case. It must have been so understood by the jury, for otherwise it had no pertinency or relevancy to anything in the case.

Great liberty is allowed attorneys in making deductions from facts, or arguments based on evidence, although such evidence may be contradicted by other evidence, but we find no evidence in this record which would justify the imputation or inference that the defendants, or either of them, had procured evidence by the improper use of money; and it was not error, but was proper, for the Trial Judge to instruct the jury to ignore such argument.

Numerous cases are cited in the briefs of counsel touching this question, but we see no reason to further extend this opinion by discussion of these cases herein. The fifth assignment of error is overruled.

It results that the judgments of the Circuit Court dismissing the suits of each of the plaintiffs at their cost, are affirmed.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiffs, Henry Hemmer and Delmas Hemmer.

Crownover and Felts, JJ., concur.