## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **SUZANNE W. GIBSON,** | ) | |
| | ) | |
| Petitioner/Appellee, | ) | **Shelby Chancery No.** 103880-1 R.D. |
| | ) | |
| VS. | ) | **Appeal No. 02A01-9701-CH-00006** |
| | ) | |
| **JAMES E. PROKELL,** | ) | |
| | ) | |
| Respondent/Appellant. | ) | |

FILED

December 10, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE NEAL SMALL, CHANCELLOR

**KEITH V. MOORE**
Memphis, Tennessee
Attorney for Appellant


**DANTON ASHER BERUBE**
**EVERETT B. GIBSON LAW FIRM**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

James E. Prokell ("Prokell") appeals the trial court's order denying Prokell's motion

to dismiss, denying his motion to set aside and rescind the trial court's order setting child support, and denying his motion for a new trial. Prokell also appeals the trial court's order of contempt for his failure to pay the ordered child support. For reasons hereinafter stated, we affirm the judgment of the trial court.

**FACTS**

The parties to this appeal were divorced by a Pennsylvania decree in September, 1993, wherein, the court awarded custody and child support to Suzanne W. Gibson ("Gibson"). There is one child of the marriage, Maxfield Prokell, born March 31, 1987. On March 31, 1995, Gibson filed a petition for registration and modification of the child support order granted by the Court of Common Pleas of Allegheny County, Pennsylvania. That same day, the summons and petition were personally served upon Prokell in Shelby County, Tennessee by Gibson's counsel. Thereafter, on August 7, 1995, Prokell filed a response wherein he admitted that Gibson was entitled to registration of the of the Pennsylvania child support order pursuant to T.C.A § 36-5-229. Additionally, Prokell failed to raise any objections to the trial court's jurisdiction over his person.

On April 17, 1995, Gibson filed a request for production of documents in order to determine the correct amount of child support owed by Prokell; thereafter, the trial court entered an order compelling discovery. Because Prokell complied with the request for production of documents only to the extent that such documents were in his actual possession, Prokell's responses to Gibson's request for production of documents were considered to be inadequate by the trial court. On September 29, 1995, the trial court ordered Prokell to turn over all documents requested within his possession, custody, or control no later than October 27, 1995. Further, the trial court ordered Prokell to file a written response to the court declaring that all documents responsive to each request for production of documents within Prokell's possession, custody, or control had been provided to Gibson. The trial court defined "control" as including, but not limited to the legal right to obtain the documents requested on demand, notwithstanding a fee or cost

2

incidental thereto. Additionally, if Prokell were unable to obtain certain documents, the trial court's order mandated that Prokell notify Gibson by October 27, 1995, of his inability to obtain certain documents, the identity of the documents, the custodian of the documents, the reason for his delay in producing the documents, and the expected date of providing said documents.

On October 27, 1995, counsel for Prokell withdrew from this cause because of Prokell's failure and refusal to cooperate with her on several occasions. Prokell secured new representation. That same day, Gibson filed a motion for sanctions for Prokell's refusal to comply with the September 29, 1995, order compelling discovery. The trial court awarded said sanctions on December 22, 1995, requiring Prokell to file a formal response to the request for production of documents no later than January 17, 1996. Further, the trial court, pursuant to T.C.A. § 36-5-229 (URESA), registered the January 4, 1994, order of the Court of Common Pleas of Allegheny County, Pennsylvania, and accepted jurisdiction over matters of child support. The trial court entered an interim child support modification increasing Prokell's child support payment from $250 per month to $500 per month and ordered Prokell to pay Gibson's attorney $2,000.

Prokell, in non-compliance with the December 22, 1995, order, filed his formal response on February 15, 1996. This formal written response was considered inadequate in that it did not state that Prokell had provided Gibson with all requested documents in his possession, custody or control as required by the September 29, 1995, and the December 22, 1995, orders. Gibson's counsel drafted and provided a formal written response for Prokell's counsel to file, but Prokell's counsel did not file it.

On February 1, 1996, Gibson filed a motion for sanctions for refusal to comply with the December 22, 1995, order awarding sanctions and for failure to comply with the September 29, 1995, order compelling discovery, granting an interim increase in child support pending a full hearing, and accepting jurisdiction over child support issues. The trial court awarded such sanctions on February 23, 1996, *inter alia*, for Prokell's failure to

3

timely pay the $500 child support ordered for January and February of 1996.

On February 28, 1996, Gibson filed her first set of interrogatories, her second request for production of documents and her first request for admissions propounded to Prokell requiring that each be accompanied by a formal written response with 30 days of service. Prokell formally responded to Gibson's request for admissions within the 30 day period, but failed to respond to her interrogatories or her request for production of documents within this time period.

Thereafter, on April 10, 1996, Gibson filed a notice to take Prokell's deposition. Prokell refused to attend the deposition in Memphis, Tennessee, and requested that the deposition be taken via telephone. Counsel for Gibson responded that given the number of documents to be produced, it would be unduly burdensome, if not impossible, to conduct the deposition over the telephone.

On May 6, 1996, Gibson filed a motion with the trial court to set permanent child support, or in the alternative to increase interim support. Additionally, Gibson made a motion to the court for further sanctions to be imposed upon Prokell for his failure to comply with court orders, specifically, the trial court's September 29, 1995, order compelling discovery, the December 22, 1995, order awarding sanctions and the February 23, 1996, order awarding sanctions. Gibson contended that Prokell had failed to produce his 1995 tax return or request for extension, his 1993 and 1994 cumulative ledgers, his petty cash receipts for 1996, and numerous other documents necessary to calculate child support under the child support guidelines. In particular, Gibson contended that Prokell had failed to provide complete discovery responses which, in return, hindered her from determining the precise nature of Prokell's claimed expenses. Thus, Gibson was unable to accurately ascertain what items could be deducted from Prokell's gross income for child support purposes. Prokell, at all times, contended that virtually all documents requested of him were provided to Gibson's counsel. However, the trial court determined that Prokell's responses were inadequate.

4

On June 6, 1996, the trial court entered an order setting permanent child support of $1,591.76 per month, retroactive to March, 1995, based on 21% of the gross income of Prokell less a deduction for taxes only. Furthermore, the trial court reduced child support arrearages to $20,879.77. In making its decision, the trial court specifically found that Prokell had willfully and deliberately failed to comply with the court's orders compelling discovery and granting sanctions. The trial court found that Prokell's non-compliance was evidenced by his failure to file a correct formal response to Gibson's first request for production of documents, by his failure to produce numerous documents necessary to calculate child support, and by his refusal to appear at his deposition.

Thereafter, on July 8, 1996, Prokell filed a motion to dismiss, a motion to set aside and rescind the trial court's order setting child support, and a motion for a new trial. On August 13, 1996, the trial court denied Prokell's motions and found him to be in contempt for his failure to pay child support at the newly ordered rate. The trial court stated that it had subject matter jurisdiction over the cause, via T.C.A. § 36-5-229, and personal jurisdiction based on the fact that Prokell was personally served with a copy of the summons and petition for registration and modification of child support in Shelby County, Tennessee on March 31, 1995. Prokell has appealed contending that the trial court had no personal jurisdiction over him and no subject matter jurisdiction over the cause under T.C.A. § 36-5-229. Further, Prokell asserts that the trial court abused its discretion in making the child support award and in failing to transfer the cause to another court.

## LAW AND DISCUSSION

**Personal Jurisdiction**

Tennessee courts recognize that parties who fail to raise the issue of lack of personal jurisdiction in their original pleading or motion to dismiss are deemed to have

waived the defense and to have submitted themselves to the court's jurisdiction. *Biogen Distributors, Inc. v. Tanner*, 842 S.W.2d 253, 256-57 (Tenn. Ct. App. 1992); *Wright v. Universal Tire, Inc.*, 577 S.W.2d 194, 195-96 (Tenn. Ct. App. 1978). In the case at bar, it is undisputed that Prokell was personally served with the summons and petition to register and modify the child support order. Moreover, on August 7, 1995, Prokell filed his first response without raising the issue of lack of personal jurisdiction or, in the alternative, without filing a motion to dismiss for lack of personal jurisdiction. As a result, Prokell waived his defense of lack of personal jurisdiction and submitted himself to the jurisdiction of the trial court. Therefore, we find that the trial court's exercise of personal jurisdiction over Prokell was proper.

**Subject Matter Jurisdiction under T.C.A. §§ 36-5-201-229**

Prokell argues that "nothing under URESA gives Tennessee the right to transfer a Pennsylvania decree to Tennessee for retrial of the issues of whether the Pennsylvania Court should have ordered life insurance, school tuition or additional support." We disagree. This Court in *Mann v. Grist* held that under T.C.A. § 36-5-229 a trial court in Tennessee is empowered to modify a sister state's child support order if that order is properly registered in a Tennessee court and the court has jurisdiction over the person. *Mann v. Grist*, 1990 WL 120723, at 1, 3 (Tenn. Ct. App. 1990).

The material facts of *Mann* are very similar to the case at bar. In *Mann*, the parties were divorced in Mississippi in 1984, and child support was set by a marital dissolution agreement. *Mann v. Grist*, Shelby Law No. 28, at 1 (Tenn. Ct. App. August 22, 1990). Said agreement set child support at $150 per month. Subsequent to the divorce, Mann and her daughter moved to Memphis, Tennessee. On November 29, 1988, wife filed a petition to register the foreign decree of divorce, property settlement and custody agreement (including child support) in accordance with T.C.A. § 36-5-229. An order enrolling the foreign judgment was entered on February 15, 1989. On February 22, 1989, wife filed a petition to modify the final decree of divorce and to increase child support on the grounds that there had been a permanent and unforeseeable change of circumstances

6

subsequent to the entry of the aforementioned divorce decree. The trial court dismissed the cause for lack of subject matter jurisdiction to modify the foreign decree. This Court reversed and remanded for a hearing on the merits stating that a court of this state can modify a child support decree of a sister state if that decree is registered in a Tennessee court with personal jurisdiction.

Except for the *Mann* decision, we do not have the benefit of other cases discussing the issue of modification under the parameters of T.C.A. § 36-5-229. We acknowledged in *Mann* that there are other cases such as *Hoyle v. Wilson*, 746 S.W.2d 665 (Tenn. 1988) discussing the issue of modification under URESA. However, *Hoyle* and the cases cited therein discuss a separate type of URESA remedy and make no mention of the remedies provided for in T.C.A. § 36-5-229. *Mann*, SHELBY LAW NO. 28, at 3. T.C.A. § 36-5-229 explicitly provides for "additional remedies."

Like the husband in *Mann*, Prokell relies on the *Hoyle* case in discussing the issue of modification under URESA. We believe Prokell's reliance on *Hoyle* is in error. Unlike the instant case, *Hoyle* did not involve the issue of whether a Tennessee trial court was empowered to modify a foreign support order because the parties were divorced in the Circuit Court of Davidson County, Tennessee. *Hoyle v. Wilson*, 746 S.W.2d 665,666 (Tenn. 1988). As stated above, the *Hoyle* court did not address a foreign decree nor did it discuss or apply T.C.A. § 36-5-229. Therefore, it is inapplicable to the case at bar.

When construing a statute, we must give effect to the legislative intent. *Mann, Shelby Law No. 28,* at 3; (quoting *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn. 1975)). In ascertaining this intent, we look to the general purpose accomplished by the legislature. *Id.* This Court, in *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988), stated by way of dicta that URESA was "designed for the purpose of enforcing orders of foreign courts relating to the support of dependent children and for the modification of support orders rendered in a court of a foreign state." We observe and emphasize the language in T.C.A. § 36-5-229 which provides that a registered foreign decree "shall have the same

7

effect and may be enforced as if originally entered in the court of this state." As this Court stated in *Mann*, "we cannot ignore that our General Assembly included the language 'shall have the same effect and may be enforced as if originally entered in the court of this state.'" Without question, if the support order had been entered in a court of this state, it could be modified by that court upon sufficient showing of changed circumstances." *Id.* at 3.

Undoubtedly, this is true in the instant case. The Pennsylvania trial court issued the divorce, custody and support decree. Under the clear direction of *Mann* and the language of T.C.A. § 36-5-229, once the Pennsylvania child support decree was registered in Tennessee, this state could treat the Pennsylvania decree as if it were originally entered in Tennessee and modify accordingly.[1] Therefore, when the trial court registered the Pennsylvania decree on December 22, 1995, it could modify the decree as long as it obtained personal jurisdiction over Prokell. As mentioned above, the trial court obtained personal jurisdiction on two grounds. First, Prokell was served with process within the state of Tennessee, and second, he failed to raise a timely objection to the trial court's jurisdiction over him in his first responsive pleading.

In light of our decision in *Mann* and the legislative intent as evidenced in the pertinent language mentioned above in T.C.A. § 36-5-229, we find that under T.C.A. § 36-5-229 the trial court possessed subject matter jurisdiction to modify the child support order of the Court of Common Pleas of Allegheny County, Pennsylvania, once that support order was registered in a Tennessee court with proper jurisdiction over the parties involved.

Additionally, Prokell contends that the trial court, being a chancery court, does not have jurisdiction under URESA. He argues that the chancery court is conspicuously absent from the definition of "court" in T.C.A. § 36-5-202(2)(A)(B)(C)(D). True, the chancery court is not mentioned in the definition of "court" within T.C.A. § 36-5-202;

---

[1]W. Walton Garrett in *Tennessee Divorce, Alimony and Child Custody* provides that "[w]hen a foreign or interstate decree has been registered in a Tennessee court having jurisdiction, the court where the decree is registered has jurisdiction to modify . . [t]hus, such a decree becomes domesticated." Garrett, *Tenn. Divorce, Alimony & Child Custody* (1996 ed.), § 20-2.

8

however, we find that T.C.A § 16-11-102 provides that "[t]he chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, . . ." Furthermore, the Tennessee Supreme Court stated in *Barrow v. Barrow*, 419 S.W.2d 164, 165 (Tenn. 1967) that both circuit and chancery court have concurrent jurisdiction in the field of domestic relations. Clearly, child support registry and modification fall within the gambit of domestic relations. Following the express language and legislative intent of T.C.A. § 16-11-102 and the judicial precedent set forth in *Barrow,* we find that chancery courts possess proper subject matter jurisdiction over causes concerning the registration and modification of foreign child support decrees under URESA. Therefore, the trial court had subject matter jurisdiction to hear this cause.

**Abuse of Discretion in Assessment of Child Support and Other Sanctions**

Tenn. R. Civ. P. 37.02 provides that if a party fails to obey an order to provide or permit discovery, the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
>
> (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

In the instant case, Prokell was given considerable opportunity to comply with the trial court's orders. Yet, we find nothing in the record showing any reason for his failure to respond timely and completely to the orders of the trial court. We acknowledge that Prokell contends that he has turned over virtually everything in his possession, custody or control. However, the trial court, in its discretion, chose to believe counsel for Gibson that he had not received certain documents from Prokell over Prokell's sworn statements to the

9

contrary. It is well settled in Tennessee that the trier of fact may believe all or part or none of the testimony of any witness and, even if the testimony is uncontradicted, the trial court in its discretion may disbelieve it. *Blackmon v. Estate of Wilson*, 709 S.W.2d 596, 603 (Tenn. Ct. App. 1986). Clearly, the trial court was justified in its disbelief of Prokell, considering his extensive history of non-compliance with the trial court's orders as manifested in the record.

On September 29, 1995, the trial court sanctioned Prokell for his failure to cooperate in discovery by an order compelling discovery. The trial court denied Prokell's objections to producing documents and ordered that all documents in his possession, custody, or control be produced by October 27, 1997. Moreover, the trial court ordered Prokell to file a formal written response to Gibson's request for production of documents. After an exhaustive examination of the record in this cause, we find no evidence that Prokell complied with the court's order by producing all documents within his possession, custody, or control no later than October 27, 1995, nor do we find any evidence that Prokell filed a formal written response in the trial court concerning what items he had turned over to Gibson until his untimely February 15, 1996 filing.

Because of his failure to comply with the September 29, 1995, order, Prokell was sanctioned a second time by the trial court on December 22, 1995. Once again, we find nothing in the record to indicate that Prokell produced all the documents in his possession, custody, or control by October 27, 1995, as required by the trial court's order compelling discovery. Additionally, no formal written response denoting what documents had and had not been produced was filed with the trial court as of December 22, 1995.

On February 23, 1996, the trial court sanctioned Prokell in the court's second order awarding sanctions for his willful and deliberate refusal to comply with the first order awarding sanctions. Prokell failed to pay his January and February child support on the first of each month as required by the court's order. Also, he failed to reimburse Gibson's attorney for court reporter fees. We fail to find anything in the record that indicates

10

Prokell's compliance with the trial court's December 22, 1995, order.

On May 6, 1996, Gibson filed a motion with the trial court to set permanent child support and reduce arrearages to judgment. Thereafter, on June 6, 1996, the trial court entered an order setting permanent child support at $1,591.76 per month and reduced arrearages to $20,879.77 based on Prokell's gross income minus taxes paid. In ordering the award of permanent child support and in reducing the arrearages to judgment, the trial court stated:

> [T]he Court finds that Respondent has willfully and deliberately failed to comply with the Court's Order Compelling Discovery and the Court's subsequent orders sanctioning Respondent for failing to comply with the Court's Order Compelling Discovery by failing to file a correct formal response to Petitioner's First Request for Production of Documents filed April 17, 1995; by failing to produce, *inter alia*, his business bank statements and cancelled checks since November 1995, his personal bank statements and cancelled checks since December 1995, certain tax filings such as 1099's and quarterly estimated tax payments, his 1994 cumulative ledger and loan documents for loans upon which he claims a substantial amount of interest deductions; by refusing to attend his deposition; and by failing to provide good faith responses to Petitioner's First Request for Admissions and First Set of Interrogatories Propounded to Respondent and Second Request for Production of Documents, which responses violate Rules 11, 33, 34, 36, and 37 of the Tennessee Rules of Civil Procedure.

We believe that the court was justified in awarding child support based on Prokell's gross income minus taxes paid. Without complete information, the trial court would be forced to piece together the puzzle of child support using fragments of information. Most assuredly, this would not be in the best interest of the child.

In considering the entirety of the sanctions imposed against Prokell, including the permanent award of child support and reducing arrearages to judgment, we are reminded of the language adopted by this court in *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982) which provides:

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

That the trial court is expressly authorized to impose sanctions upon a party failing to comply with discovery orders is without question. When the trial court exercises its

11

discretion in sanctioning a party, the exercise of such discretion will not be disturbed by this Court in the absence of an affirmative showing that the trial judge abused his or her discretion. *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982)(quoting *Hemmer v. Tennessee Electric Power Co.*, 139 S.W.2d 698 (Tenn. Ct. App. 1940). The *Holt* court went on to add that "[t]he trial courts of Tennessee must and do have the discretion to impose sanctions such as dismissal in order to penalize those who fail to comply with the Rules and, further, to deter others from flouting or disregarding discovery orders." *Id.* Prokell has failed to carry his burden to show affirmatively that the trial court abused its discretion. To the contrary, the record is quite clear. Prokell has consistently refused to comply timely and completely with the trial court's orders. Orders of the trial court cannot be taken lightly as evidenced by the full sanctioning power bestowed upon the courts of this state. This Court stated in *Kirchner v. Pritchett*, No. 01-A-01-9503-JV00092, at 3 (Tenn. Ct. App. December 6, 1995):

> The risk of failure or inability to produce evidence of the noncustodial parent's income and expenses should not fall on the custodial parent. This information is within the noncustodial parent's control. Thus, if the noncustodial parent has failed or refused to produce evidence of his or her income prior to the hearing, the burden of producing satisfactory evidence of income and expenses should be placed on the noncustodial parent--the party most able to provide it.

Undoubtedly, Prokell is the noncustodial parent and is in a much better position to obtain the information requested. Therefore, he bears the risks of his failure or refusal to produce evidence of his income and expenses, and he suffers the consequences when these risks materialize in the form of penalties for his non-compliance. In this cause, that risk of non-compliance manifested itself in the form of court ordered sanctions, orders of contempt, and a permanent award of child support coupled with a reducing of arrearages to judgment. As shown above, the trial court is provided with the most severe spectrum of sanctions to carry out its discovery orders. Finding no abuse of discretion, we affirm the trial court's sanctions imposed upon Prokell including the granting of permanent child support and reducing of arrearages to judgment.

**Transfer of Cause of Action**

In light of our total affirmance of the trial court's judgment, the issue of transfer by

this Court is moot. We acknowledge, however, that this cause may reach the trial level again at some time in the future. Prokell may submit to the trial court a properly supported motion for recusal at that time, if necessary.

Based on the reasons stated herein, we affirm the trial court's order denying Prokell's motion to dismiss and motion to set aside and rescind order setting child support and/or for a new trial. Costs are adjudged against appellant for which execution may issue, if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.